BROWN (JOHNSON v.). See Case No. 10,511.
BROWN (JOHNSON v.). See Case No. 7,375.

---

## Case No. 2,017.
### BROWN v. JONES et al.
[2 Gall. 477.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1815.

SEAMEN — DESERTION — "TRADING VOYAGE" — "FREIGHTING VOYAGE" — SHIPPING ARTICLES— SUIT FOR WAGES — LIMITATION — NECESSITY OF PLEADING.

1. A mariner shipped on a voyage "from Boston to the Pacific, Indian and Chinese oceans, or elsewhere, on a trading voyage, and from thence back to Boston," with a stipulation, that two months' wages should be paid on arrival at Canton; the voyage being in fact a trading voyage to the northwest coast for furs; it was *held*, that the outward voyage terminated at Canton, and that the shipping articles did not authorise a return from Canton to the northwest coast; and that, therefore, it was not a desertion in a mariner to leave the ship at Canton, it being the intention of the ship to return to that coast.

[Cited in The Elizabeth Frith, Case No. 4,-361; Granon v. Hartshorne, Id. 5,689.

---

[1] [Reported by John Gallison, Esq.]

Distinguished in Thompson v. The Oakland, Id. 13,971.]

2. It seems, that a "trading voyage" does not include a "freighting voyage."

[Cited in The Brutus, Case No. 2,060.]

3. The words "or elsewhere," in the shipping articles, are either void for uncertainty, under the act of congress regulating mariners in the merchants' service, or are to be construed as subordinate to the principal voyage stated in the articles.

[Cited in Magee v. The Moss, Case No. 8,-944.]

4. The statute of limitations of Massachusetts (which as to this point is a transcript of the statute, 21 Jac. c. 16,) applies only to suits at common law for mariners' wages, and not to suits in the admiralty.[2]

[Cited in Willard v. Dorr, Case No. 17,679; The Utility, Id. 16,806; Joy v. Allen, Id. 7,552; Hunter v. Marlboro, Id. 6,908; Southard v. Brady, 36 Fed. 561.]

5. The respondent in the admiralty cannot avail himself of the statute of limitations unless he plead it.

[Cited in Joy v. Allen, Case No. 7,552.]

Appeal from the district court of the United States for the district of Massachusetts.

In admiralty. This was an allegation in a case of substraction of wages. It appeared from the evidence, that the libellant, at Boston, on the 15th of November, 1805, shipped as a mariner on board of the ship Eclipse, on a voyage "from the port of Boston to the Pacific, Indian, and Chinese oceans, and elsewhere, on a trading voyage, and from thence back to Boston." It was further stipulated in the shipping articles, "that two months' wages are to be paid to them (the officers and seamen) on their arrival at Canton, and which are to be the only wages they are to receive during their absence," and "that no officer or mariner is allowed to make any trade in any port or ports whatever, during the present voyage, unless first obtaining leave from the commander on board, under the penalty of forfeiting all his wages and wearing apparel on board the ship Eclipse, and further, if any fur is found with any one, it is forfeited on discovery." In fact, the ship was bound on a trading voyage to the northwest coast for furs. The ship sailed from Boston in January, 1806, went around Cape Horn to California, thence to the Sandwich Islands, and thence to the Russian settlements on the northwest coast of America. A cargo was there taken on board on freight for Canton, with which the ship afterwards safely arrived at that port, in the month of February or March, 1807. Previous to the sailing for Canton, the master had determined, after unloading his freighted cargo at that port, to return with his original cargo to the northwest coast for trade, and from thence to go again to Canton, before his return to the United States; and this determination was well known to the crew. The libellant, having this knowledge, declared his

intention not to return to the coast, and accordingly, at Canton, sometime between the first and tenth day of March, 1807, and before the freighted cargo was unladen, he secretly left the ship, without a discharge and against the will of the master. This supposed desertion was immediately afterwards inserted in the logbook by the proper officer, and an ineffectual search was made to find him, and compel him to complete the voyage. The ship, still having on board the principal part of her outward cargo, again returned to the northwest coast, and in September, 1807, was wrecked, at a place called Oonalaski, and wholly lost.

Selfridge, for libellant.
Aylwin, for respondents.

STORY, Circuit Justice (after reciting the facts). Such are the principal circumstances of the case, upon which several points have been argued at the bar. It has, in the first place, been argued, that the voyage designated in the shipping articles included the second voyage to the northwest coast, and that this construction is fully supported by the usage in this particular trade. I will not stop to consider, how far the usage of trade is legally admissible to extend the language of a written contract, so as to include an intermediate voyage not embraced in its terms; for no such usage is shown in this case. In order to establish such usage, there must be evidence of a general and uniform course of the trade, so well known, as that all parties must be presumed conusant of it. Occasional instances, in which particular persons have made a second voyage, are not sufficient for this purpose. In the present case, the witnesses declare, that there is no general usage; that whether one or two voyages be made to the coast depends upon the nature of the original outfit, the success of the voyage, the accidents of the seasons, and in short upon all those considerations, which in ordinary voyages influence the judgments of prudent and discreet masters and owners. Every thing, therefore, relative to the effect of a general usage, may be entirely laid out of the case. And I am satisfied, that by the true construction of these articles, the outward voyage terminated on the first arrival at Canton, and did not include an intermediate voyage to the coast and back again. The act of congress [July 20, 1790; 1 Stat. 131, § 1] for the regulation of seamen in the merchants' service, requires that the voyage or term of service should be specified in the shipping articles. It would be an utter evasion of the statute, to allow such an indefinite expression, as "elsewhere," to control or extend the meaning of the other certain description of the voyage, or to constitute, of itself, a sufficient description. I hold, with the learned Mr. Justice Winchester (1 Am. Law J. 207), that the term "voyage"

[2] Willard v. Dorr [Cases Nos. 17,679 and 17,-680]; The Sarah Ann [Case No. 12,342]; The Mary [Id. 9,186].

is a technical phrase, and always imports a definite commencement and end; and that the term "elsewhere" must be construed, either as void for uncertainty, or as subordinate to the principal voyage stated in the preceding words. And if there be any doubt as to these words, that doubt is not to be enlarged, so as to cover any intermediate voyage back from the Chinese to the Indian and Pacific oceans. It is analogous to the case of several ports mentioned in a policy of insurance, where it has been held, that party must avail himself of the ports in the order, in which they stand in the policy, and cannot recur back from the last to any former port. There is too, in this contract, an express reference to Canton, as a port where two months' wages were to be paid; and as this was to be the only advance during the voyage, it affords a strong inference, that the parties did not contemplate a second voyage to that port, or they would have guarded against a second advance on a second arrival there.

It has, in the next place, been argued, that it is apparent upon the allegations of the parties, that the cause of action accrued more than six years before the commencement of this suit, and that, therefore. it is barred by the statute of limitations of Massachusetts, which is substantially a copy of the stat. 21 Jac. c. 16. The language of this statute does not seem applicable to a proceeding in the admiralty. A libel in rem, or in personam, is not "an action of account or upon the case," in the legal sense of those terms. In one case (Ewer v. Jones, 3 Salk. 227) Lord Holt is reported to have held, that the statute of limitations did not extend to causes maritime, spiritual, or equitable, but only to duties at common law; yet, that mariners' wages are a duty at common law, and, if sued for at common law, the statute would be a good bar. From this language it would seem, that his lordship thought the statute no bar to a suit in the admiralty, but a good bar only to a suit at common law. But from other reports of the same case (2 Ld. Raym. 934; 6 Mod. 25; 1 Comyn. 137) it may be gathered, that his opinion inclined the other way. The cause, however, went off upon another point, and, in a subsequent case (Hyde v. Partridge, 2 Ld. Raym. 1204), after considerable discussion, the court appear to have strongly inclined to limit the statute to suits at common law. And very soon afterwards an express statute was made (4 Anne, c. 16) to cure the defect. The natural inference from this brief review of judicial and parliamentary decisions is, that suits in the admiralty are not within the statute of limitations of 21 Jac. c. 16; an inference, which, in my judgment, stands entirely confirmed by every rational construction of its language. It is not a little remarkable, that the act of congress [July 20, 1790; 1 Stat. 133, § 6] regulating suits for mariners' wages in the admiralty contains no limitations as to the

time, within which such suits shall be brought. And as the admiralty and maritime jurisdiction is exclusively confided to the courts of the United States, it would be very difficult to maintain, that a statute of limitations of a state could, proprio vigore, apply to suits on the admiralty side of these courts. The provision in the 24th section of the judical act (24 Sept. 1789 [1 Stat. 85], c. 20, § 24) extends only to trials at common law; and in no other cases can state regulations or limitations govern the courts of the United States, unless they fall within the principles of universal law, which direct and limit the application of the lex loci. However, for the reasons already stated, I am entirely satisfied, that the statute of limitations of Massachusetts never was intended to include suits in the admiralty. And, if it were otherwise, it is very clear, that the respondents could not avail themselves of that statute in the present case, for they have not pleaded it. No principle is better established, than that a party may waive the benefit of a statute introduced in his favor; and he is in law deemed so to do in respect to the statute of limitations, unless he spread it before the court, as a special exception or bar to the suit.

It has, in the next place, been argued, that the wages were completely forfeited by the desertion of the libellant at Canton. And there can be no doubt, that, both by the marine law and by the act of congress, a desertion duly proved works this penalty, unless it be justified or excused upon the principles of law. It is contended by the libellant, that he is within the exception; first, because the taking on board of freight for Canton was a deviation from the voyage; and, secondly, because, at all events, he was not bound to return to the coast from Canton, as was the settled and avowed intention of the master. The voyage described in the shipping articles, was to the Pacific, Indian, and Chinese oceans, "on a trading voyage," which seems pointed to a commerce by buying and selling on account of the original owners and shippers, and not to the intermediate transportation of cargoes on freight. The latter employment is usually denominated a freighting and not a trading voyage. But, inasmuch as the voyage from the Russian settlements to Canton was clearly within the terms of the original contract, the taking on board of the freight cannot be deemed a deviation, unless it occasioned unnecessary and unusual delay. This has not been established by the evidence, and therefore, until the arrival at Canton, the seamen were bound to remain by the ship. Were they bound to remain, after the arrival at that port, until after the cargo on freight was unladen, and the master had done some act towards an equipment for a return to the coast? In my judgment, they were not bound to remain. The cargo on freight was not within their original contract, and they were not bound

to remain by the ship 'for the sole purpose of assisting in the unlivery, after a reasonable time had elapsed for the fulfillment of all their other duties to the ship. The master had repeatedly declared his intention to return to the coast, and had kept the original cargo on board for that purpose; and as there is no evidence to show, that the desertion was under circumstances unreasonable or injurious, it seems to me, that the conduct of the master, coupled with his avowed intentions, authorized the mariner to hold himself absolved from a further performance of his contract. If the ship had, notwithstanding, returned directly to the United States, a very different question might have arisen. But here the subsequent events completely establish the correctness of the conclusions of the mariner, as to the abandonment of the voyage.

The judgment of the district court, decreeing wages, must therefore be affirmed with costs.