## Case No. 17,679.

### WILLARD et ux. v. DORR.

[3 Mason, 91.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1822.

ADMIRALTY—SUIT FOR MASTER'S WAGES—STATUTE OF LIMITATIONS—CAPTURE OF VESSEL—EFFECT ON WAGES CLAIM.

1. The master of a ship may maintain a suit in the admiralty in personam against the owner, for his wages, but not in rem against the ship, for he has no lien.

[Cited in The Santa Anna, Case No. 12,325; The Stephen Allen, Id. 13,361; The Merchant, Id. 9,434; Cox v. Murray, Id. 3,304; The Larch, Id. 8,085; Grant v. Poillon, 20 How. (61 U. S.) 168; The M. Vandercook, 24 Fed. 475; The Atlas, 42 Fed. 794.]

2. The statute of limitations of a state is no bar to a suit on the admiralty side of the courts of the United States.

[Cited in The Utility, Case No. 16,806; Joy v. Allen, Id. 7,552; Scull v. Raymond, 18 Fed. 553; Nesbit v. The Amboy, 36 Fed. 926; The Queen of the Pacific, 61 Fed. 215.]

3. The statute of Anne, limiting suits in the admiralty for seamen's wages to six years, is not a bar to such suit in the courts of the United States.

[Cited in The Utility, Case No. 16,806; Southard v. Brady, 36 Fed. 561.]

4. If during the voyage there be a capture and final restitution decreed, the right to wages is not complete until the restitution.

[Cited in Brown v. Lull, Case No. 2,018.]

This was a libel brought by the administratrix of the master of the ship Jenny, owned by the respondent, John Dorr, for wages earned by the master in a voyage originally undertaken from Boston to China, and back again to Boston, and also for wages earned by his apprentice during the same voyage. The voyage commenced in May, 1807, and was carried on until December, 1808, when the ship was captured as prize by a British cruiser, and carried into Calcutta for adjudication. Upon trial there, the ship and cargo were condemned, and an appeal was taken to the lords commissioners in England. Upon the hearing of the appeal, the decree was, after many years' delay, reversed, and the property ordered to be restored. But the respondent did not receive the proceeds, under the decree of restitution, until 1818. To the libel, asserting these facts, the respondent put in a plea excepting to the jurisdiction of the court, upon the ground, that the admiralty had no jurisdiction in a suit by the master for wages; and also interposed a bar of the statute of limitations of Massachusetts; and also of the statute, passed in the reign of Queen Anne, limiting suits in the admiralty for seamen's wages to six years.

The cause was argued upon the question of the sufficiency of these pleas, by Mr. Hubbard, for defendants, who cited Brown v.

1 [Reported by William P. Mason, Esq.]

Jones [Case No. 2,017]; 3 Burrows, 625; St. 4 Ann. c. 16, § 17. And by L. Shaw, for respondent who cited Com. v. Leach, 1 Mass. 61.

STORY, Circuit Justice. So far as the objection to the present suit rests on the ground of the incompetency of the court to retain the jurisdiction, because it is a suit for the master's wages, I am of opinion, that it cannot be sustained. If this were a suit in rem against the ship for payment of the master's wages, the objection would be fatal; for it has been settled at the common law, that the master has no lien upon the ship for his wages; and the jurisdiction of the admiralty in rem can be supported, only where a lien exists, which it may lawfully enforce. Such a lien is admitted to exist for the seamen's wages. But the same difficulty does not occur in respect to a suit in personam. There, the contract being for services purely maritime, and of the same nature as the seamen's, it is a case of admiralty and maritime jurisdiction. As is observed by Lord Chief Justice Abbott, in his treatise on Shipping (page 459), "in this view of the subject, it is difficult to distinguish the case of the master from that of the persons employed under his command; the nature and place of the service, and the place of the hiring, are in both cases usually the same." He goes on to state, that it has however been settled, that the master can only sue the owners personally, in a court of common law. I am inclined to think, that the question has never come under the cognizance of a court of common law, except in cases for prohibitions of suits of the master against the ship. All the cases within my research appear to me to be of that nature, and the reasons given for the decisions apply to suits in rem. The master is said to trust to the personal credit of the owner, and to have no lien on the ship, as the seamen have. See Com. Dig. "Admiralty," E. 15; Ragg v. King, 2 Strange, 858; Clay v. Sudgrave. 1 Salk. 33; s. c. 1 Ld. Raym. 576; 12 Mod. 405; Carth. 518; Read v. Chapman, 2 Strange, 937; The Favourite, 2 C. Rob. Adm. 232; 2 Browne, Civ. & Adm. Law, 87, 89, 95; Wilkins v. Carmichael, 1 Doug. 101; De Lovio v. Boit [Case No. 3,776]. Indeed, in some cases, the judges of the courts of common law seem to have been ignorant, that a seaman could maintain a suit in personam in the admiralty for wages (though that is now familiar), as well against the owner, as master. In ancient times the principal mode of proceeding in the admiralty was by process in personam. See, also, The Hope, 3 C. Rob. Adm. 215, and note; Brevoor v. The Fair American [Case No. 1,847]; Clerke, Praxis, Adm. tit. 1; The Anne [Case No. 412]; [M'Culloch v. Maryland] 4 Wheat. [17 U. S.] 438; [Mauro v. Almeida] 10 Wheat. [23 U. S.] 473.

My opinion is, that the admiralty has jurisdiction in cases of this nature in personam, though not in rem. The contract is maritime, and the service maritime; and I can perceive

no principle, upon which the court can entertain a suit in personam for the seamen, which does not apply to the master. This point has in fact been repeatedly ruled in this court. We may then dismiss the question of jurisdiction.

As to the other point, so far as the bar depends upon the statute of limitations of Massachusetts, it has been already disposed of by this court, in the case of Brown v. Jones, 2 Gall. 477. As to the statute of Anne (4 Anne, c. 16, § 17), the words are, "that all suits and actions in the court of admiralty for seamen's wages shall be commenced and sued within six years next after the cause of such suits or actions shall accrue." Now these words plainly apply to suits in the high court of admiralty in England. There is not the slightest allusion to the vice admiralty or colonial courts. The language is, "suits and actions in the court of admiralty," not in any court of admiralty. There is no reason to suppose parliament meant to include any colonial courts. They might well be left to adjudicate on these matters according to the general principles of maritime law; and a rule of limitation, which in England might be convenient and useful, might be wholly inapplicable in some of the colonies, and mischievous in others. I am not aware, that this statute of Anne was ever adopted in practice in any of the colonies, as a rule governing their courts of admiralty. If it was, it is incumbent upon those, who assert the fact, to establish it by some competent evidence. None has been adduced. The principle, stated in Com. v. Leach, 1 Mass. 59, may be true, that, "generally, when an English statute has been made, in amendment of the common law of England, it is here to be considered as a part of our common law." But the doctrine is inapplicable to the present case. That is not a statute in amendment of the law, which merely prescribes a limitation as to suits in one particular court. The colonial courts of common law, might well adopt some English statutes in amendment of the common law, as applicable to the state of the colonies. But the courts of admiralty in the colonies were governed, in their principles and practice, by more general considerations. The omission, on the part of parliament, to restrict them to any period, in relation to entertaining suits, when it did restrict the high court of admiralty, might well be considered as equivalent to a declaration, that their proceedings ought to remain, according to the general course of the admiralty. The colonies did not create or undertake to make laws for the courts of admiralty. They were exclusively under the general regulation of the crown and of parliament. 2 Browne, Civ. & Adm. Law 490; 3 Bl. Comm. 69. In the charter of Massachusetts, of 1692, the king expressly reserved the exclusive authority to create and regulate admiralty courts. The power to create vice admiralty courts, generally, was considered as a prerogative of the lord high admiral, or of the crown, acting in its sovereign

capacity, when that office was vacant. If, however, it were shown, that in fact the statute of limitations of Anne had been adopted in practice by the colonial courts, before the Revolution, it would not follow, that it was obligatory upon the admiralty courts, organized under the government of the Union. They derive their powers and authority from the constitution and laws of the United States, and have no connexion or dependence upon the colonial vice admiralty courts. They possess general admiralty and maritime jurisdiction; and, in the exercise of it, must be governed by the general principles of such tribunals, and not by a statute provision, emanating from another government, and which ought only to regulate its own high court of admiralty. The lex fori, positively prescribed as a limitation upon suits, in a foreign tribunal, is not of course to be adopted, as a binding authority upon the courts of another government. As far as I know, no statute of limitation, not absolutely addressed to a court, has ever been admitted to control its general jurisdiction over suits. Undoubtedly, courts of admiralty, like courts of equity, will not entertain stale demands; and will assume, upon general principles, some limitation. It will presume demands extinguished after the lapse of a reasonable time, and feel, that it best dispenses justice by refusing its aid in reviving dormant and antiquated claims. This, however, is the exercise of a far different power from that of entertaining a strict legal bar. It is an exercise of sound discretion, and is to be guarded by a wholesome equity.

There are circumstances, also, in the present case, which make it difficult to apply the bar of the statute of limitations, considering the imperfect manner, in which the plea attempts to meet the matter of the libel. The right to wages, to a certain extent at least, was suspended by the capture, and was revived only by the final restitution under the decree of reversal. The property was not actually received by the owner until 1818; and the exact time of the reversal is not definitely averred, so that it is not even put in, as an allegation, that six years have elapsed since that decree. If any thing decisive turned upon these considerations, I should probably direct the parties to amend the pleadings. But in any event I am not able to say, that the right to wages, thus suspended and thus revived, even if the statute of Anne applied, could be reached by it, unless six years had elapsed after the decree of restitution, or perhaps after the effective receipt of the proceeds of the property. That statute would not begin to run, until the right of action was complete; and as the right to wages was inchoate only before the capture, and perfected only by the final restitution, the "cause of action" did not, in the sense of the statute, "accrue," until that period.

Upon the whole, my opinion is, that the pleas put in by the respondent must be overruled, and he be assigned to answer over per-

emptorily to the merits of the libel. Decree accordingly.

[For a subsequent hearing of this cause, see Case No. 17,680.]