## Case No. 115.

### AIREY et al. v. MERRILL.

[2 Curt. 8.][1]

Circuit Court, D. Maine. Sept. Term, 1854.[2]

SHIPPING—CHARTER-PARTY—DESTRUCTION OF VESSEL—APPEAL.

1. Under a covenant in a charter-party to restore the vessel to the owners, "dangers of the seas excepted," the charterer is liable for the value of the vessel in case of its destruction by an accidental fire originating on board, such fire not being one of the dangers of the seas, within the exception.

[Cited in Salmon Falls Manuf'g Co. v. Tangier, Case No. 12,265; McCann v. Conery, 11 Fed. Rep. 749.]

[See The Peytona, Case No. 11,058.]

[2. The fact that the vessel, when burned, was lying on a shoal on which she had stranded, is not ground for reducing the damages, where it is not alleged nor satisfactorily proved that her value was materially diminished by the stranding, as the burden is on the charterers to bring the case within the exception of dangers of the seas.]

[3. The charter money for the time preceding the destruction of the vessel may be allowed as damages.]

4. If the libellant does not appeal from a decree of the district court, he cannot ask to have the damages increased here.

[Cited in Allen v. Hitch, Case No. 224; Bush v. The Alonso, Id. 2,223; The Wm. Bagaley v. U. S., 5 Wall. (72 U. S.) 412; The Stephen Morgan v. Good, 94 U. S. 604; Shaw v. Folsom, 40 Fed. Rep. 512.]

[Appeal from the district court of the United States for the district of Maine.]

[In admiralty. Libel by Chandler R. Merrill against James Airey and others for breach of a covenant in a charter party. Decree for libelant. Merrill v. Arey, Case No. 9,468. Respondents appeal.]

Before CURTIS, Circuit Justice, and WARE, District Judge.

CURTIS, Circuit Justice. This is a libel on a charter-party filed by the appellee against the present appellants. It is founded on a covenant contained in the charter-party, by which the schooner William Henry was let by the libellant to the respondents for voyages from Frankfort, in Maine, where the vessel lay, to the Chesapeake bay, or any southern port or ports in the United States; the charterers to victual and man the vessel and appoint the master. And the charterers covenanted "to deliver the said schooner to the owner aforesaid,

[1][Reported by Hon. B. R. Curtis, Circuit Justice.]

[2][Affirming Merrill v. Arey, Case No. 9,468.]

at said Frankfort, in as good order as she shall be in when delivered to them, ordinary wearing, and dangers of the seas excepted." During her first voyage the schooner was destroyed by fire; and the first question to be determined is, whether fire, other than from lightning, is one of the "dangers of the seas," within the meaning of that phrase in the charter-party.

Neither the researches of the learned counsel, who have evidently carefully examined the books, nor my own, have enabled me to find any precedent, on which I can rely. For though the phrase "perils of the seas" has been long in use, and has been often adjudicated upon, it has been only in reference to the liabilities of carriers, under bills of lading, and of underwriters upon policies of insurance. In King v. Shepherd, [Case No. 7,804,] Mr. Justice Story, in commenting on these words as interpreted when occurring in bills of lading and policies of insurance, says: "The rules which regulate losses under policies of insurance, are by no means the same as either necessarily, or ordinarily govern in cases of common carriers. Each contract has its own peculiar principles of interpretation, and it is not safe, in many instances, to reason from one to the other." And this is true also when applied to charter-parties; at least so far as to admonish us not hastily to adopt an interpretation of the phrase, "perils of the seas," in a bill of lading, or policy of insurance, and apply it to an exception in a covenant in a charter-party. The responsibility of carriers is rested by the common law upon grounds of public policy which have materially influenced the interpretation placed upon the exceptions to their liability. And undoubtedly the great object of policies of insurance, indemnity of the assured, and the practical necessities of commerce under them, have greatly affected their interpretation. I have not felt at liberty therefore to assume that these words must or do import the same in a covenant by the charterer with the owner, as in a policy or bill of lading. But I have also looked at the natural and fair import of the words, the connection in which they occur, the office they were designed to perform, and the obligations which belong to the relation in which the parties stood to each other under the contract.

And first, as to the natural and fair import of the phrase "dangers of the seas," I think it must be admitted that it indicates only those perils which are peculiar to the sea. So it has been generally understood. Story, Bailm. § 512; 3 Kent, Comm. 275. It is true that a broader meaning has, in many cases of insurance, been given to it; and it would not be practicable to fix any definition of the phrase which would be justly applicable to it in all contracts. The words have a strict sense, in which they include only the natural accidents peculiar to the sea. They have also a more extended sense in which they import accidents occurring upon the sea. And the true question here is, whether they should receive one or the other interpretation when they stand as an exception in a covenant by the charterer to restore the vessel to the owner.

It is a sound rule of construction, that a covenant, introduced ex industria into an instrument, shall be deemed to have been inserted for some purpose, and that the purpose was, not to leave the rights of the parties, as they would have been, had no such covenant existed. Now if this covenant had not been inserted, it would have been the duty of the charterer to restore the vessel to the owner, at the expiration of the voyages for which she was hired, excepting only ordinary wear, and such losses as the charterer, by the use of due diligence, could not guard against. Such are the obligations attached by the law, independent of all stipulations, to the contract of hiring a thing. Story, Bailm. § 397–400. And if this exception is to receive a lax interpretation, the covenant adds nothing to the obligations of the charterer. He is only bound to restore the vessel, excepting ordinary wear and such losses upon the sea, as the charterer could not, by using due diligence, prevent. For I suppose it cannot be maintained that a casualty would be deemed a peril of the sea, within this exception, if the charterer, by the use of due diligence, could have guarded against and prevented it. Otherwise, the covenant, instead of adding anything to the obligations of the hirer, has lessened those obligations. It does not seem to me probable that the parties have inserted this covenant intending to lessen the obligations attached by the law to the contract of hiring, or to leave those obligations unchanged. And this view is strengthened by the form and nature of the covenant and the exception out of it, and the rule of interpretation applicable to such an exception. By the covenant the charterer makes himself an insurer; by the exception he excludes certain risks. The rule of construction as to exceptions is, that they are to be taken most strongly against the party for whose benefit they are introduced. This rule has been repeatedly applied to contracts of insurance. The court of exchequer rested its decision upon it in Blackett v. Royal Exch. Assur. Co., 2 Cromp. & J. 251. In Donnell v. Columbian Ins. Co., [Case No. 3,987,] Mr. Justice Story held it properly applicable to such contracts, as he also did in Palmer v. Warren Ins. Co., [Id. 10,698.] It is a settled rule of construction which is applicable to this covenant. These words of exception being introduced by the covenantor for his own benefit, if they are capable of bearing a more or less extended meaning, the rule requires that meaning to be allowed to them which is least beneficial to the covenantor.

It is a circumstance of some importance in my judgment, though for reasons before suggested not decisive, that accidental fire, occurring through human agency, has never been held to be a peril of the sea under any marine contract. I am aware that in Plaisted v. Boston & K. Steam Nav. Co., 27 Me. 135, it is said by the court to be settled, that fire is a peril of the sea within a policy of insurance. It is true, that the risk of fire is assumed by marine policies, because fire is one of the perils expressly enumerated in such policies. Mr. Phillips in his last edition, (volume 2, note 1099,) says it would have been included, if not expressly mentioned. Perhaps this is a fair deduction from the nature and objects of the contract of insurance; but so far as I know, it never has been included; and the fact that the risk of fire, eo nomine, is taken, in addition to perils of the seas, has some tendency to show that this phrase has not generally been understood to embrace fire, even in such contracts. And I think he would be a bold man who should now venture to strike out from the enumerated risks on a marine policy, the word fire, trusting to the courts to insert it by construction. I should apprehend some difficulty in making such a construction at this day. Taking a more practical view of this question, it does not seem to me that a contract by the charterer to be responsible to the owner for losses by accidental fire is in its nature unreasonable or unlikely to be made. The hirer, in this case had the entire possession, command, and navigation of the vessel. He appointed the master and hired the crew. They were his servants. The owner might well say to him, if a fire occurs through the negligence of your servants on the high seas, or in a distant port, I shall have no proper means of proving that negligence. I do not choose to leave any such question open. You must take the responsibility for loss by fire. It was upon grounds of public policy, similar to these, that the common law held carriers liable for accidental fire, and though that public policy did not embrace charterers of vessels, it shows that owners may find reasons of a similar character for protecting themselves by contract from similar dangers. Upon the whole, my opinion is, that the fire by which this vessel was destroyed, was not a peril of the sea within the exception in the covenant, and consequently the charterer was liable for the loss.

As to the damages, as the libellant did not appeal, he cannot claim greater damages in this court than were allowed in the district court. Stratton v. Jarvis, 8 Pet. [33 U. S.] 4; Canter v. American Ins. Co., 3 Pet. [28 U. S.] 318. The respondents have made some suggestions, by way of argument, to reduce the amount of damages decreed below; but I think the decree should not be disturbed in this particular. The respondents did not assign as error in that decree, that the damages, if any should be allowed, were excessive. But if they had done so, I do not thing any error has been shown. It is urged that the value of the vessel as she lay on the shoal should be taken, and this is correct. provided the stranding was not upon a well-known shoal, or was effected by causes beyond the control of the master. There is difficulty in coming to a conclusion, favorable to the respondents, on either of these points. I have not thought it necessary to go into a minute examination of the evidence concerning them, because I am of opinion that I cannot treat the value of the vessel as materially diminished by the stranding. It is not so pleaded in the answer, which admits her value to be $2,000, the sum fixed upon by the district court. Nor does the evidence satisfactorily show, that the position of the vessel on the shoal was such, as exposed her to much peril, or would have occasioned any considerable expense to get her off. There is not a little discrepancy between the evidence which comes from the vessel and the shoresmen who went on board. And, considering that the burden is on the respondents, to bring the case within the exception in their covenant, by showing that the vessel's value was reduced, before she was burnt, by a danger of the sea, I am not satisfied that they have sustained that burden. The libel claims the charter money for one month and a half, and the answer denies that any thing ever became due on this account. But it does not allege that the vessel was unseaworthy when she sailed on her voyage from Frankfort, and if she were not, I perceive no reason why this monthly hire was not properly allowed by the district court. The decree of the district court is affirmed with costs.