### THE QUEEN OF THE PACIFIC.

BANCROFT-WHITNEY CO. et al. v. PACIFIC COAST STEAMSHIP CO.

(District Court, N. D. California. April 17, 1894.)

No. 10,301.

1. ADMIRALTY PLEADING—JOINDER OF CLAIMS—MULTIPLICITY OF SUITS.
   Joinder of a number of claims for damages growing out of contracts of affreightment for distinct lots of merchandise is permissible in admiralty for the purpose of avoiding multiplicity of suits.

2. ADMIRALTY—JURISDICTION IN REM—TIME OF SEIZURE.
   The requirement of admiralty rule 23 that a libel in rem must state that the property is in the district does not prevent the court from acquiring jurisdiction in the case of a vessel which, being within the district at the time the libel is verified, departs before it is filed, but, returning after the filing, is then seized on alias monition.

3. SHIPPING—AFFREIGHTMENT—MARITIME CONTRACT—SUIT IN REM.
   The fact that contracts of affreightment are personal contracts between the shipper and shipowner does not prevent them from being maritime contracts on which a libel in rem against the ship may be maintained.

4. ADMIRALTY—STATE STATUTES OF LIMITATION.
   State statutes of limitation do not apply to a libel in rem to enforce a maritime lien for breach of a contract of affreightment.

5. SHIPPING—AFFREIGHTMENT—SUITS IN REM AND PERSONAM.
   Loss or damage accruing from negligent handling of goods by the ship gives the shipper a right, if he so elect, to sue on the contract of affreightment, and he is not restricted to an action of tort.

6. SAME — BILL OF LADING — STIPULATIONS FOR PRESENTING CLAIMS — CONSTRUCTION.
   A provision in the shipping receipts that all claims against the steamship company or any of its stockholders for damage to the goods must be presented within 30 days from the date thereof, as a condition precedent to maintaining a suit against such company or its stockholders, does not cover the right to maintain a suit in rem against the ship.

7. SAME—VALIDITY—PUBLIC POLICY.
   It seems that a provision in a bill of lading requiring all claims for damages to be presented within 30 days from the date thereof makes the period of limitation unreasonably short, and is therefore void, as against public policy.

This is a libel by the Bancroft-Whitney Company and others against the steamship Queen of the Pacific, of which the Pacific Coast Steamship Company is claimant, to recover damages for breach of contracts of affreightment. The claimant excepted to the libel.

Milton Andros, for libelants.

Geo. W. Towle, Jr., for claimant.

MORROW, District Judge. The libel in this case embraces 38 separate claims for damages arising out of breach of contracts of

affreightment in the transportation of distinct lots of merchandise on the Queen of the Pacific. The practice of joining a number of claims in one libel is permissible in a court of admiralty to avoid a multiplicity of suits. Rich v. Lambert, 12 How. 347; Sun Mut. Ins. Co. v. Mississippi Val. Transp. Co., 14 Fed. 701. The action is for the purpose of enforcing the claims in rem against the steamship, which is owned by the Pacific Coast Steamship Company. The alleged breach is a failure to deliver the merchandise described in the several bills of lading or shipping receipts, and for damages for injuries to the same, claimed to have been occasioned by the negligence of the officers and crew of the vessel.

The Queen of the Pacific, at the time the libel was filed, was not within the northern district of California, having departed therefrom some few hours previously. The monition was consequently returned "Not Served." An alias monition was issued and returned "Served," and subsequently a bond was given, and the vessel released. The claimant thereupon excepted to the libel on the grounds—First, that there is no cause of action against the vessel; second, that the cause of action, if any ever existed, is against the Pacific Coast Steamship Company; third, that the causes of action have been waived and abandoned by virtue of a limitation clause of 30 days, contained in the bill of lading or shipper's receipt; fourth, that the demands were stale, neglected, and legally abandoned, and barred by virtue of certain statutes of limitation of this state; fifth, that the court had no jurisdiction.

The objection that the vessel was not within the jurisdiction of the court when the libel was filed is immaterial. Rule 23 of the general admiralty rules prescribed by the supreme court provides that "all libels in instance causes, civil or maritime, shall state the nature of the cause, * * * and if the libel is in rem, that the property is within the district." The libel in this case contains such an allegation, and, for the present purpose, it must be assumed to be true. The explanation is made that, when the libel was verified, the vessel was in the district, but the objection is based upon the fact that she departed soon after, and was not in the district when the libel was filed. The vessel had, however, departed upon one of her regular voyages, and upon her return she was duly served with process. The contracts declared on are contracts of affreightment entered into between the Pacific Coast Steamship Company and the shippers of the goods. It is a maritime contract, cognizable in the admiralty, and this is sufficient. Morewood v. Enequist, 23 How. 491; The Belfast, 7 Wall. 642. The court, having jurisdiction of the subject-matter, obtained jurisdiction over the res, when it was attached by the marshal upon the alias monition. Taylor v. Carryl, 20 How. 599; Cooper v. Reynolds, 10 Wall. 317; The Rio Grande, 23 Wall. 465.

The first and second exceptions are substantially the same. The claimant contends that the Pacific Coast Steamship Company, and not the vessel, should have been proceeded against; in other words, he claims that these contracts of affreightment were personal engagements between the Pacific Coast Steamship Company, as the

owner of the vessel, and the Bancroft-Whitney Company and the other joint libelants. They were personal in so far as the Pacific Coast Steamship Company, as the owner of the Queen of the Pacific, entered into the contracts with the libelants; but that fact does not alter the maritime nature of these contracts. They still remained contracts of affreightment,—an engagement, on the one hand, to transport goods or merchandise, and, on the other, to pay for such transportation. These engagements are maritime, and shippers have a lien on the vessel for breach of contract. The Belfast, supra. They may be enforced in personam or in rem. The libelants have elected to sue in rem. Counsel for claimant mistakes the nature of a maritime contract when he urges that because the contractual relation is of an individual character, therefore it is a personal contract, enforceable only in personam, and not in rem. The mere fact that the lien originates in the personal contract between the shipowner primarily, or by his agents for him, and the shipper, does not, in my opinion, convert the contract into a personal engagement, or operate as an implied waiver of a shipper's right to pursue the rem in a court of admiralty on a contract which otherwise is unquestionably maritime. As was said by Justice Campbell in Taylor v. Carryl, 20 How. 599:

"The district court seems to have considered that a ship was a juridical person, having a status in the courts of admiralty, and that the admiralty was entitled to precedence whenever any question arose which authorized a judicial tribunal to call this legal entity before it. The district court, in describing the source of its authority, says of the contract of bottomry that 'it is made with the thing, and not the owner,' and that the contract of the mariners is similar; that the res 'represents' in that court all persons having a right and privilege, while the rights of the owner are treated there as something incorporeal, separable from the res, and which might be seized by the sheriff, even though the res might be in the admiralty. This representation is not true in matter of fact nor in point of law. Contracts with mariners for service, and other contracts of that kind, are made on behalf of owners, who incur a personal responsibility; and, if lenders on bottomry depend upon the vessel for payment, it is because the liability of the owner is waived in the contract itself. 'In all causes of action,' says the judge of the admiralty of Great Britain, 'which may arise during the ownership of the persons whose ship is proceeded against, I apprehend that no suit could ever be maintained against a ship where the owners were not themselves personally liable, or where the liability had not been given up.' The Druid, 1 W. Rob. Adm. 399. And the opinion of this court in The Freeman v. Buckingham, 18 How. 183, was to the same effect."

In the case last cited the court say:

"We are of opinion that under our admiralty law contracts of affreightment, entered into with the master, in good faith, and within the scope of his apparent authority as master, bind the vessel to the merchandise for the performance of such contracts, wholly irrespective of the ownership of the vessel, and whether the master be the agent of the general or the special owner."

We come now to the exception that the action is barred by the statutes of limitation of this state. It is a well-settled rule that a state statute of limitation does not apply to maritime liens. The H. B. Foster, 3 Ware, 167, Fed. Cas. No. 6,291; The Platina, 3 Ware, 182, Fed. Cas. No. 11,210; The Key City, 14 Wall. 653; Ben. Adm. Jur. 185; Griswold v. The Nevada, 2 Sawy. 145, Fed. Cas. No. 5,839; Willard v. Dorr, 3 Mason, 91, Fed. Cas. No. 17,679; Brown v. Jones,

2 Gall. 480, Fed. Cas. No. 2,017. The libelants do not sue on the liens given by the state statute, but by virtue of the general maritime law. That being so, they are not affected by the limitation of time provided in section 813 of the Code of Civil Procedure, limiting the lien to the period of one year from the time the cause of action accrued. Nor are they barred by virtue of sections 337 and 338 of the above Code, the first of which prescribes a period of four years within which one may sue on a contract in writing executed in this state; and the second, which limits the time to three years, to bring an action for "injuring any goods or chattels." These limitations do not apply to maritime liens. As was said by Judge Ware in The H. B. Foster, 3 Ware, 167, Fed. Cas. No. 6,291:

"There is no statute of limitation raising a bar in the admiralty. Lapse of time, indeed, connected with circumstances, will create an equitable bar. Every man is bound to use reasonable diligence in enforcing his rights. If he does not, and in the free and rapid circulation of property he suffers other persons to acquire an interest in the subject-matter without notice of his rights, the just penalty of such neglect may be the forfeiture of his rights, or postponement of them to the equitable claims of others. Ships, it is well known, are frequently changing owners. Still more frequent are claims and rights against them for wages, repairs, and supplies. All such claims ought to be enforced in due season, and, indeed, promptly, and not be allowed to lie as secret liens and charges, which may operate as a surprise, if not a fraud on others. It is such considerations that have led able and learned admiralty judges to say that they will look narrowly into a lien claim of this kind if it is sought to be enforced at a later time than the termination of the voyage for which the supplies were furnished, and not because the claim then necessarily and legally becomes stale."

In the case of The Key City, 14 Wall. 653, the supreme court, speaking through Mr. Justice Miller, declared the law of the admiralty respecting the defense of laches or delay on the judicial enforcement of a maritime lien as follows:

"We think that the following propositions, as applicable to the case before us, may be fairly stated as the result of these authorities: (1) That, while the courts of admiralty are not governed in such case by any statute of limitations, they adopt the principal that laches or delay in the judicial enforcement of maritime liens will, under proper circumstances, constitute a valid defense. (2) That no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case."

In other words, the deduction from the authorities is that, while there is no such thing as a statute of limitation in the admiralty law, yet courts of admiralty, in the furtherance of justice, will act by analogy, and refuse to entertain any suit where the party seeking to enforce his claim or lien has been guilty of laches. It is in fact the equitable doctrine of laches, depending upon the circumstances of the case. What would be laches in one case might not constitute such in another. The question is one addressed to the sound discretion of the court, depending upon all the facts of the particular case. It is, therefore, a question of evidence, to be determined hereafter upon the facts as they may appear.

The counsel for claimant further contends that the libels should have counted on a tort, and not on a contract. The libelants had the election to sue upon contract or tort. They could stand upon the

contracts of affreightment, or they might waive their right to sue on the contracts, and sue in tort. The contention of counsel for claimant that, as the libelants are suing for damages to the merchandise described in the bills of lading or shipping receipts, alleged to have been occasioned by the negligence of the officers and crew of the Queen of the Pacific, the cause of action is tort, and not contract, is not well founded. It is well settled by adjudications that one may recover on a contract of affreightment, for damages accruing from the negligent handling of goods in the course of transportation, or from other negligence. "Shippers have a lien by the maritime law upon the vessel employed in the transportation of their goods and merchandise from one port to another, as a security for the fulfillment of the contract of the carrier that he will safely keep, duly transport, and rightly deliver the goods and merchandise shipped on board, as stipulated in the bill of lading or other contract of shipment." The Belfast, supra. In The A. M. Bliss, 2 Low. 103, Fed. Cas. No. 274, Judge Lowell says:

"The district court has full jurisdiction of contracts of affreightment, whether evidenced by charter party or bill of lading; and, though the damages may, in any case, be somewhat indirect,—as, for instance, if they arise out of a jettison which requires contribution, or out of a fraudulent payment of salvage by the master,—yet the mode in which the claim for compensation arises will not oust the jurisdiction."

In the case of The M. Vandercook, 24 Fed. 472, decided by Judge Nixon, and quoted by counsel for claimant to the point that this suit should be an action ex delicto, and not ex contractu, the learned judge had to deal with a contract of towage, and not of affreightment, where a different principle has been held to apply. But Judge Benedict, in The Samuel J. Christian, 16 Fed. 796, held that one might sue on a contract of towage for negligence of the tug in towing the vessel. This was likewise held by Judge Brown in The Grapeshot, 22 Fed. 123. Judge Brown says: "By the law of both countries [America and England] negligence in a common carrier is a tort as well as a breach of contract."

The last objection is based upon the following clause in the shipping receipts:

"It is expressly agreed that all claims against the P. C. S. S. Co., or any of the stockholders of said company, for damages to or loss of any of the within merchandise, must be presented to the company within thirty days from the date hereof; and that after thirty days from the date hereof no action, suit, or proceeding in any court of justice shall be brought against said P. C. S. S. Co., or any of the stockholders thereof, for any damage to or loss of said merchandise; and the lapse of said thirty days shall be deemed a conclusive bar and release of all right to recover against said company, or any of the stockholders thereof, for any such damage or loss."

The libelants did not present their claims for damage or loss to the company within 30 days from the date of the bills of lading or shipping receipts, nor was this action brought within that time. Counsel for libelants contends that this stipulation is limited to personal actions against the Pacific Coast Steamship Company and its stockholders, and does not apply to an action against the vessel, —to a suit in rem. The strict letter of this clause certainly justifies such a construction of its terms. That a stipulation of this charac-

ter should be strictly construed against the party for whose benefit it accrues is well established by the authorities. Mr. Chief Justice Gibson, in Atwood v. Transportation Co., 9 Watts, 88, in relation to a restriction in a contract limiting the liability of a carrier, said:

"Though it is perhaps too late to say that a carrier may not accept his charge in special terms, it is not too late to say that the policy which dictated the rule of the common law requires that exceptions to it be strictly interpreted, and that it is his duty to bring his case strictly within them."

In New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. 383, Judge Nelson thus states the law:

"The special agreement in this case under which the goods were shipped, provided that they should be conveyed at the risk of Harnden, and that the respondents were not to be accountable to him or to his employers, in any event, for loss or damage. The language is general and broad, and might very well comprehend every description of risk incident to the shipment. But we think it would be going further than the intent of the parties, upon any fair and reasonable construction of the agreement, were we to regard it as stipulating for willful misconduct, gross negligence, or want of ordinary care, either in the seaworthiness of the vessel, her proper equipments and furniture, or in her management by the master and hands. * * * If it is competent at all for the carrier to stipulate for the gross negligence of himself and his servants or agents in the transportation of the goods, it should be required to be done at least in terms that leave no doubt as to the meaning of the parties."

In the case of Airey v. Merrill, 2 Curt. 8, Fed. Cas. No. 115, Mr. Justice Curtis said:

"The rule of construction as to exceptions is that they are to be taken most strongly against the party for whose benefit they are introduced. * * * These words of exception being introduced by the covenantor for his own benefit, if they are capable of bearing a more or less extended meaning the rule requires that meaning to be allowed to them which is least beneficial to the covenantor."

In Hooper v. Wells, Fargo & Co., 27 Cal. 11, Judge Sawyer used the following language:

"What is the extent of the restriction upon the common-law liabilities of the defendants? The language must be taken most strongly against the defendants. Edw. Bailm. 492. The instrument is executed by them alone. It was drawn up with care, in language selected by themselves, the blank form having been printed in advance, ready to be presented to all persons offering property for transportation by their express. The restrictions were for their benefit. The owners of packages sent by express rarely examine with care, or, indeed, have an opportunity to critically consider, the terms of the receipt presented by them; and general terms, under such circumstances, are apt to mislead. These are some of the reasons given in the books. * * * To justify the conclusion that such exemption is contemplated, the language should be unequivocal, and susceptible of no other reasonable interpretation."

In the above case the language used by Judge Sanderson, who dissented from the opinion of the court on other points, is as follows:

"The instrument was prepared by the defendants without previous consultation with the plaintiff, who had, therefore, no choice in the selection of the terms employed. And it is well settled that the language creating the exceptions from liability in such cases must be strictly construed against the party in whose favor they are made. The language was introduced by the defendants for their benefit; and, if it is susceptible of a more or less extended meaning, the rule of construction in such cases is to adopt that which is the least favorable to the party who is to be benefited thereby."

In Levering v. Insurance Co., 42 Mo. 88, Judge Wagner, speaking of a stipulation limiting the carrier's liability, said:

"As the exception is an innovation on the principles of law, and introduced exclusively for the benefit of the carrier, the construction must be made most strongly against him."

The inequality upon which the parties stand with respect to stipulations limiting the carrier's liability is forcibly stated by Mr. Justice Gray in the case of Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 441, 9 Sup. Ct. 469, which is as follows:

"The carrier and his customer do not stand upon a footing of equality. The individual customer has no real freedom of choice. He cannot afford to higgle or stand out, and seek redress in the courts. He prefers rather to accept any bill of lading or to sign any paper that the carrier presents; and in most cases he has no alternative but to do this, or to abandon his business."

Subjecting the stipulation in the contracts of affreightment in this case to a strict construction, and it is evident that it in terms applies only to the Pacific Coast Steamship Company and to its stockholders. The vessel is not mentioned in this stipulation, and the court cannot import this qualification into the contracts as one contemplated by both parties.

But, even if the stipulation should be deemed to apply to the vessel, the period of 30 days from the date of the contracts appears unreasonable. The provision is not 30 days from the time of the loss or damage, but 30 days from the date of the contract. In the case of Pacific Exp. Co. v. Darnell, 6 S. W. 765, it was held that 60 days from the date of the contract was unreasonable. The court say:

"Any reasonable limitation contained in the bill of lading would be upheld by the court. But it has been decided by this court that an unreasonable restriction is not valid, even in cases to which our statute does not apply. Railroad Co. v. Harris, 67 Tex. 166, 2 S. W. 574. Is this a reasonable limitation? We think not. If it had been stipulated that a claim should be made in 60 days from the ascertainment of the loss, the case would have been different. But to require a shipper to give notice of his claim within a short period of the date of the bill of lading, without reference to the time when a loss for the breach of the contract accrued, is to impose a restriction which in many cases would deny a right of action, and thereby permit the carrier to contract against his negligence, which is never allowed."

In the case of Express Co. v. Reagan, 29 Ind. 21, a period of 30 days was held to be unreasonable, under the circumstances of that case, and void as against public policy. The limitation of 30 days provided in the contract under consideration appears to be unreasonable. The vessel might be detained at sea by storms or accident, and the shipper would be debarred from presenting any claim by the lapse of the 30 days, or have but a short time in which to ascertain his loss or damage and present his claims for the same to the company. Contingencies might arise which would render a period of that duration, beginning to run from the date of the inception of the contract, useless, and which would practically deprive the shipper of any opportunity for redress.

It follows from these considerations that the exceptions should be overruled, and it is so ordered.