### THE WESTMINSTER.

(District Court, E. D. Pennsylvania. May 23, 1900.)

No. 32 of 1898.

SHIPPING—DAMAGE TO CARGO—CONDITION OF BILL OF LADING REQUIRING NOTICE OF CLAIM.

A provision of a bill of lading that "neither the steamship owners nor their agents, nor any of their servants, are to be liable * * * for any claim notice of which is not given before the removal of the goods," imposes a reasonable and valid condition precedent to the right to maintain a suit for damage to the goods in shipment, either against the owners personally or in rem, at least to the extent of requiring notice to be given within a reasonable time; and a failure to comply with such condition

is not excused by the fact that the ship had knowledge of the damage, the chief purpose of the requirement being to advise the owners that they are charged with liability therefor.

In Admiralty. Suit in rem to recover for damage to cargo in shipment.

Horace L. Cheney and John F. Lewis, for libelant.

Convers & Kirlin, Henry R. Edmunds, and George W. Betts, Jr., for respondents.

McPHERSON, District Judge. In March, 1898, the Philadelphia Transatlantic Line received at Dundee 18 bales of jute cloth consigned to John T. Bailey & Co., of Philadelphia, and 20 bales of burlaps consigned to the Farr & Bailey Company, of the same city. The goods were carried to London by the steamship Perth, and were forwarded from that city by the Westminster to the port of destination. Upon arrival of the vessel at Philadelphia early in April, after a stormy voyage, the bales were found to have broken out of stowage, and to be torn, and otherwise injured, by reason of being tossed about in the hold. These injuries were clearly visible, and were known by the libelant, the Insurance Company of North America, which was the underwriter of the goods, immediately upon the arrival of the ship. The libelant's surveyor saw some of the damaged bales in the hold of the vessel, and some upon the pier alongside. There is no direct evidence concerning the consignees' knowledge of the injury, but it cannot be doubted that they were as well and as speedily informed as the libelant. No notice of a claim for damages was given by either the consignees or the insurance company before the removal of the goods or afterwards. The insurance company, having paid the loss to the consignees, brings this action against the ship to be reimbursed, alleging that the goods were injured by reason of negligent stowage.

Defense is taken upon several grounds, of which I think it necessary to consider only one, namely, the clause in the bill of lading, that "neither the steamship owners, nor their agents, nor any of their servants, are to be liable * * * for any claim notice of which is not given before the removal of the goods." I have recently decided in The St. Hubert (No. 23 of 1898) 102 Fed. 362, that a similar clause was a binding condition, and that failure to comply was a bar to recovery. I need not repeat the reasons there given, but I may add that the present case is less favorable to the libelant than was The St. Hubert, for the damage here was known to the insurance company while some of the goods were still in the hold, and there was nothing to prevent its giving immediate, or at least a very prompt, notice of the claim. The case much resembles Angel v. Steamship Co. (D. C.) 55 Fed. 1005. The libelant contends, however, that notice would have been superfluous, because, it is said, the purpose of such notice is to inform the vessel that the goods have been injured, and because it appears in proof that the ship already had such information. But, as I understand it, this is not the chief purpose of the notice. It is not merely the fact of injury that is to be

communicated, but also the further fact—much more important to be known by the owner of the vessel—that he is charged with liability for the injury. Goods may be injured from many causes during a voyage, and for some injuries he might be liable, while for others— such, for example, as might happen from perils of the seas—he might not be liable. The clause therefore requires that notice of a claim for damages must be given,—notice that the carrier's liability is relied upon to make good a loss; for only if such a claim is made does the fact of injury become important to the carrier, and call for his investigation. In the present case notice was not given, and I regard this default as fatal to the libelant's right to recover.

It is also argued that the clause requiring notice does not apply to a suit in rem, and in support of this argument I have been referred to a decision by Judge Morrow in The Queen of the Pacific (D. C.) 61 Fed. 213, in which the following provision in a shipping receipt was considered:

"It is expressly agreed that all claims against the P. C. S. S. Co., or any of the stockholders of said company, for damages to or loss of any of the within merchandise, must be presented to the company within thirty days from the date hereof; and that after thirty days from the date hereof no action, suit, or proceeding in any court of justice shall be brought against the said P. C. S. S. Co., or any of the stockholders thereof, for any damage to or loss of said merchandise; and the lapse of said thirty days shall be deemed a conclusive bar and release of all right to recover against said company, or any of the stockholders thereof, for any such damage or loss."

This was held to be a condition precedent to maintaining a suit in personam, but not to affect a suit in rem against the vessel. I assume the correctness of the decision upon the peculiar language of the condition, but I think there is an obvious difference between the provision there passed upon and the provision now under consideration. The clause in controversy declares that neither the steamship owners nor their agents or servants are "to be liable" for any claim notice of which is not given before the removal of the goods; and this, I think, cannot properly be construed so narrowly as to exempt the shipowner if he should be sued personally in a form of proceeding that may end in seizing his property by one kind of writ, and to deny him exemption if he should be sued in another form of proceeding that seizes his property in the beginning by a different writ. He is "liable" if he may be sued, and I think it can make no difference by what kind of action the liability is sought to be enforced. Ultimately, his property is to be reached in order to satisfy the libelant's claim; and if he is "liable" when his property is exposed to the danger of a final writ of execution in a personal action, I can see no ground for holding that he is any the less "liable" when his property is seized in limine by a proceeding in rem. It is familiar law that exemptions are to be strictly construed against the carrier, but even in an exemption a strained construction should not prevail over the plain meaning of words.

The libel must be dismissed, at the costs of the libelant.