## Case No. 9,186.

### The MARY.

[1 Paine, 180.] [1]

Circuit Court, S. D. New York. April Term, 1822.

SEAMEN'S WAGES—LIEN—WHEN ENFORCED—WAIVER—BONA FIDE PURCHASER.

1. No rule has ever been adopted by the maritime law, either of England or this country, prescribing the time within which mariners should proceed to enforce their lien for wages. Necessity of some rule.

[Cited in Cole v. The Atlantic, Case No. 2,976; Packard v. The Louisa, Id. 10,652; Pierce v. The Alberto, Id. 11,142; The Galloway C. Morris, Id. 5,204.]

2. The lien of mariners has no analogy to common law liens, as regards the possession of the subject.

[Cited in Edwards v. The Robert F. Stockton, Case No. 4,297.]

3. A forbearance by seamen to libel a vessel at a port where they are discharged, before the end of the voyage, does not amount to a waiver of their lien, as against a subsequent bona fide purchaser. Difference between a bottomry lien and a lien for wages as respects delay in enforcing it.

[Cited in Knox v. The Ninetta, Case No. 7,-912; The Bolivar, Id. 1,610; The Avon, Id. 680; Crosby v. The Lillie, 40 Fed. 368.]

[Distinguished in The Rover v. Stiles, 5 Blackf. 485.]

4. A vessel sailed with a cargo on a voyage from New-York to New-Orleans and back. She remained at New-Orleans more than a year after her arrival, waiting for freight. Not obtaining any, the master discharged the seamen, whom he persuaded to return with him in another vessel to New-York, to get their wages. Afterwards, while the vessel was at New-Orleans, she was sold, and went a voyage to Liverpool, and thence to New-York. *Held*, that the seamen could libel her on her arrival at New-York, and that they were entitled to their full wages to the time of their return to that city.

[Cited in The Utility, Case No. 16,806; Thompson v. The Oakland, Id. 13,971; Knox v. The Ninetta, Id. 7,912; Edwards v. The Robert F. Stockton, Id. 4,297; Packard v. The Louisa, Id. 10,652; The D. M. French, Id. 3,938; The Galloway C. Morris, Id. 5,204; Southard v. Brady, 36 Fed. 561.]

[Distinguished in The Rover v. Stiles, 5 Blackf. 485.]

This was an appeal from a decree of the district court for the Southern district of New-York, sustaining a libel for seamen's wages.

The respondents shipped on board the Mary, as mariners, in June, 1818, on a voyage from New-York to New-Orleans and

¹ [Reported by Elijah Paine, Jr., Esq.]

back to New-York, or such other port as the ship might take freight for. Freight was earned to New-Orleans, but the ship remained at that port, after her arrival, until August, 1819, without obtaining freight for any other port, when the master, in pursuance of what he deemed his duty, discharged the seamen and left the ship himself. In October following, the present claimant purchased the ship, and sent her the next March on a voyage to Liverpool, and thence to New-York, at which latter place she arrived in July, 1820, and was soon after libelled by the respondents. The respondents were dissuaded from libelling the ship at New-Orleans, by the master, who informed them, that if they would come on with him to New-York, he would see them paid. The district court allowed full wages until the return of the seamen to New-York. [Case unreported.]

W. Slosson and J. Bulkley, for appellant, contended that, as the vessel did not earn freight after her arrival in New-Orleans, the seamen were not entitled to full wages; freight being the mother of wages. 3 Johns. 154, 518; 9 Johns. 350; 11 Johns. 279; Abb. Shipp. 430, 434, 483. And that, not having libelled the vessel in New-Orleans, where they might have done it, but having elected to return to New-York and look to the owners or master, they had either waived their remedy against the ship, or been guilty of such laches, that they could not proceed against her, in the hands of a bona fide purchaser. Code de Comm. arts. 191, 196; Abb. Shipp. 465, 470, note; 1 East, 4; 7 East, 5; Doug. 101; 2 Emer. Ins. 230; 1 Valin, Comm. 362; [Blaine v. The Charles Carter] 4 Cranch [8 U. S.] 328; 4 C. Rob. Adm. 245.

H. Wheaton and E. Paine, for respondents, replied that, where men are discharged by the master, without their own fault or consent, the maxim that "freight is the mother of wages," cannot apply. Johnson v. Sims, Case No. 7,413; 3 Johns. 517; 1 Holt, Shipp. 449; 2 Ld. Raym. 1044; 3 Bos. & P. 405; Roccus, De Nav. No. 43; Pothier, Des Matelots, 179, 198; 2 Rob. Adm. 251; 3 Rob. Adm. 92; 5 Rob. Adm. 224; Abb. Shipp. 491, note; The Saratoga, Case No. 12,355. That mariners are not barred of their remedy against the ship, though in the hands of a bona fide purchaser, by any lapse of time; the statute of limitations of the state not applying, and the United States having no statute on the subject: and that, at any rate, there was no evidence, in the present case, of that gross neglect which might occasion a forfeiture of their remedy. Madonna D'Idra, 1 Dod. 40; Brown v. Jones, Case No. 2,017; The Jerusalem, Id. 7,294; Relf v. The Maria, Id. 11,692; Code de Comm. art. 196; 1 Holt, Shipp. 443.

LIVINGSTON, Circuit Justice. This is an appeal from a sentence of the district court

sustaining a libel for wages on behalf of the respondents, Wilson and Joseph.

That freight was earned on the voyage from New-York to New-Orleans, and that wages of course became due, admits of no doubt. It is equally clear, that the voyage, as it regarded the crew which shipped in New-York, was ended at New-Orleans by the act of the master, and the present libellants were discharged by him, with a promise that he would see their wages paid in New-York. They accordingly left the Mary on the 5th of August, 1819, and claim wages from the 4th of June, 1818, when they shipped on board of her, at the port of New-York, on a voyage thence to New-Orleans and back to New-York, or such other port as the said ship might take freight for.

The right of the libellants to wages thus far being either admitted or not much contested by the claimant, it is insisted that, by not libelling the ship at New-Orleans, they have lost all remedy against her, and can resort only to the former owner or master, inasmuch as she has since passed into the hands of a bona fide purchaser, without notice of any lien on her for the wages now demanded. If a claim of this kind be not seasonably prosecuted, and the vessel become the property of another for a fair consideration and without notice, it seems reasonable that those who have been negligent should suffer, and not an innocent purchaser. Some rule of this kind appears the more necessary in a case where it is so difficult, if not impossible, to ascertain either the existence or the extent of demands of this nature. But however reasonable such a rule may appear, none has yet been adopted, either in England or this country, which requires a seaman to assert his lien in any given time, or which will justify this court in saying that if he does not proceed by libel the very first opportunity which is afforded him, (which is the case here,) he shall forfeit all right of obtaining satisfaction in that way, unless the vessel shall still belong to the same person.

Few claims are more highly favoured and protected by law, than those for seamen's wages. They are hardly earned, and liable to many contingencies, by which they may be entirely lost, without any fault on their part. When they become due, the vessel, owners, and master are generally all responsible until satisfaction be obtained. The liability of a vessel for wages may be considered as the law of every commercial nation. They take precedence of bottomry bonds, and in the language of Sir William Scott, they are "sacred liens, and as long as a plank remains, the sailor is entitled as against all other persons to the proceeds as a security for his wages." These unqualified and strong terms would hardly have been employed, unless it had been intended to postpone, not only a claim under a bottomry bond, which was then before the court, but also that of a bona

fide purchaser, to a demand for seamen's wages. It is true that by the laws of France this privilege of prosecuting against the vessel is extinguished, if after a voluntary sale, she shall have made a voyage in the name and at the risk of the new purchaser,· and without objection on the part of the privileged creditor of the vendor. The 16th article of the celebrated Marine Ordinance of Louis the 14th, confines this preference to the wages of the sailors employed on the last voyage; which provision, with the qualification just mentioned, is also found in the present commercial code of France. Whatever wisdom or justice there may be in thus limiting the continuance of this lien, it amounts only to a municipal regulation, and would rather seem to imply that antecedently, the law even of France was otherwise, and had been changed on account of the inconveniences to which purchasers of this species of property had been exposed. The same rule has not yet been adopted in this country.

A lien for wages was likened, on the argument, to that of a factor on merchandise in his hands, and it was supposed, that as the latter lost his lien by parting with the property, so a sailor, by giving up possession of the vessel, lost his right of proceeding against her for wages. There is no resemblance between those cases. A seaman as such has no possession of a vessel, and his claim for wages is perhaps incorrectly termed a lien. It is rather a right to proceed against the vessel, and to be paid out of her proceeds in preference to all other creditors. His very application to a court of admiralty is on the ground that the possession of the ship is not in him, and has for its object its arrest and detention by proper process, until his right can be adjudged.

It was also insisted by the appellant, that there had been a voluntary and express abandonment on the part of the libellants of their right to have recourse against the vessel. Even if abandonment by parol could have availed, there is no evidence of such abandonment. The only testimony on this point is, that the master brought the libellants with himself to New-York with a view to prevent them from libelling the ship at New-Orleans, which they threatened to do; and that upon their asking the master when they should get their wages, he told them to come with him to New-York and he would pay them. This amounts to nothing more than a forbearance on the part of the libellants not to libel at that time, in expectation of being paid in New-York, but not to a waiver of any remedy they might have if they were not paid on their arrival here.

There is one circumstance which has not been adverted to, but appears to me of some importance. The libellants were discharged, and the voyage for which they shipped was ended as to them at New-Orleans, on the 5th of August, 1819. The claimant made his purchase three months after, the Mary still be-

ing in that port, from which she did not depart for Liverpool until the month of March following. Now it cannot well be denied even on the claimant's own principles, that at the time of the purchase, and for five months after, that is, as long as the vessel was at New-Orleans, she was liable to be proceeded against in the district court of Louisiana for the very wages claimed in this suit. If then the purchasers took her when this lien, (as it has been called,) was in full operation, and might have been enforced, not only on the day of the sale, but long after, it is not perceived why it should be extinguished, as it regards the present owner, merely from the circumstance of the vessel's having since made a voyage to Liverpool and from thence to New-York. If she had been disposed of at Liverpool, the purchaser then might have had some reason to complain; but the present claimant is in no worse condition than if the Mary had been libelled at New-Orleans after his purchase, and previous to her departure for Liverpool.

Because, in the case of Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328, the supreme court of the United States postponed the obligee in two bottomry bonds to other creditors of the obligor, who had seized the vessel in execution on a judgment obtained more than a year after the date of the bonds, it is thought that within the reason of that decree the present claim for wages ought not to prevail in prejudice of the intervening right of a fair purchaser. But in that case, it should be remembered, that between the date of the first bottomry bond and the filing of the libel, the Charles Carter had made two voyages from Europe to America, and one from America to England, the freight of which had been received by the libellant, who held the bottomry bond. In the case before us, the delay is not only much less, but there is not that danger of fraud, which was relied on in the argument of that cause. It was said, and very properly, that the bonds might have been held up or concealed, for the purpose of giving a false credit to the owner of the vessel, while the obligee was receiving the whole benefit of her earnings. Such a fraud cannot be practised in the case of seamen, nor can their forbearance to libel ever be imputed to any sinister motive whatever, or be attributed to aught but negligence, inability or ignorance; and, therefore, there seems no reason for considering their case as at all affected by the decision which has been just mentioned, or as coming at all within the reason of it.

It may be further remarked, that the Mary was libelled very soon after her first return to New-York, at which port the libellants had shipped, and which may be regarded as the termination of the voyage for which they had engaged themselves; and if they had not been discharged, but had remained on board until her return to this city, a doubt cannot be entertained that the ship would have been bound, as well for their wages, which were earned on the voyage to New-Orleans, as for those which would have accrued afterwards, notwithstanding her intermediate alienation. If this be so, it would not be easy to assign any good reason why, as they were regularly discharged at New-Orleans, they should lose their remedy against the ship merely because they did not arrest her in transitu, but waited patiently for her arrival at New-York. If it be admitted that mariners may be guilty of such gross negligence in following up a claim of this nature, as to forfeit their remedy against a vessel in the hands of an innocent purchaser, it would be imposing on them a very unreasonable diligence to compel them in all cases, under the penalty of such a forfeiture to institute a proceeding in rem the moment their wages became due, or at any rate before the vessel left the port at which the voyage, as it respected them, was ended. It might be very inconvenient for them to remain in a foreign port until the termination of a suit in the admiralty; or, which would often be the case, they might find it very difficult in a strange place to procure that security or bail which is required on the institution of proceedings against a vessel—or they might be generous or liberal enough rather to forego for the moment their right of suit in this way, than to arrest for a small sum a valuable vessel at a distance from home, at the hazard of breaking up the remainder of her voyage, or of exposing her to be sold at a great sacrifice.

My opinion, upon the whole therefore, is, that the forbearance, or delay complained of in this case, furnishes no pretence for dismissing the present libel, or for deciding that the change of title which took place at New-Orleans, is a bar to the libellants of the vessel for the wages claimed in this suit. The sentence of the district court is, therefore, affirmed, with costs.