### Case No. 7,235.

JAY v. ALLEN et al.

[1 Spr. 130.][1]

District Court, D. Massachusetts. March 13, 1846.[2]

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 7,552.]

F. C. Crowningshield, for libellant.

T. G. Coffin, for respondents.

SPRAGUE, District Judge. The first question is, whether this is a stale claim. The last communication proved to have taken place between the owners and the libellant, in relation thereto, was in October, 1839. This libel was filed within six years therefrom, viz., in May, 1845. The last letter from the respondents' attorney requests the libellant to wait for the adjustment of his share, until the insurance had been settled. At what time the insurance was settled, or abandoned, does not appear.

It is generally true, that "courts of admiralty, like courts of equity, govern themselves in the maintenance of suits, by the analogy of common law limitations." The acknowledgment made by the correspondence would be sufficient to take the case out of the statute at common law. Brown v. Jones [Case No. 2,017]; Willard v. Dorr [Id. 17,679]; The Rebecca, 5 C. Rob. Adm. 102; The Sarah Ann [Case No. 12,342].

It is further urged, that the delay of the libellant in enforcing his claim, may have deprived the respondents of the means of proving that he was incompetent, or had deserted; it is not, however, even alleged that he was incompetent, and it is not proved that he deserted; and no such presumption of desertion can arise, any more than of payment.

It is not, therefore, to be deemed a stale claim. In regard to the other defence set up by the respondents, it appears that 1250 barrels of oil had been taken before the libellant was discharged, and the ship was afterwards condemned at Tahiti, as unseaworthy. A small part of the oil was sent home by another vessel, the residue sold by the captain, and the proceeds fraudulently appropriated to his own use.

The question is, whether the owners are responsible to the libellant, for his share of the oil sold by the captain. By the shipping articles, the contract is made between the libellant, as one party, and the master and owners. The seaman never had any ownership of the oil. The amount of his compensation was to depend upon the quantity taken; and payment was to be made as soon after the arrival of the vessel at her home-port, as the oil could be sold, and an adjustment made.

The respondents were bound to furnish a seaworthy ship to take and bring home the oil, and they were in default in not doing so. Upon the condemnation of the vessel, the custody and care of the oil devolved upon the master, who must be deemed the agent

of the owners; the seamen having had no power to appoint, or remove a master, or to prevent his disposing of the oil. It was the duty of the master, as agent of the owners, to send it home, free of expense to the mariners, and as this was not done, the libellant is entitled to recover the same share, as if it had been. Baxter v. Rodman, 3 Pick. 439; Bishop v. Shepherd, 23 Pick. 494; Abb. Shipp. 606, note; Tne Frederick, 5 C. Rob. Adm. 8; Wilkinson v. Frasier, 4 Esp. 182.

A superficial view of the shipping articles, has sometimes created the impression, that there is a partnership between the mariners and owners; but that notion has long since been corrected by the courts. The contract clearly gives no ownership of the oil to the seamen. It is to be brought home, delivered to the owner, sold by him, the accounts adjusted, and then the seaman has a right to a certain share of the money, as compensation for his services. In this mode, the amount of his wages is ascertained. It is true, his right to them is contingent upon success, and so also it is in the merchant service, to the true extent of the maxim, "that freight is the mother of wages." The relation in which the crew stand to the owners in the whaling business, is that of seamen to their employers. They have no voice in the appointment of their officers, or the conduct of the voyage, and are bound to implicit obedience. They are liable for desertion, or other neglect or violation of duty, to the same punishment and penalties as other seamen. This being the relation which has been established between them and the owners, while they are subjected to its evils, they ought to be entitled to its benefits; and the master should no more be deemed their agent, when he sells the oil which they have taken, and squanders the proceeds, than when he embezzles the freight-money, which he has received in the merchant service. His neglect to preserve and send home the oil is the neglect of the owner, so far, at least, as the mariners are concerned.

As to interest, it is to be allowed after sufficient time had elapsed for the arrival of the oil and sale thereof, and adjustment of the voyage, and after demand made by the libellant. Decree for the libellant with costs.