SOUTHARD *et al. v.* BRADY.

*Circuit Court, S. D. New York.*   October 15, 1888.)

ADMIRALTY—PRACTICE—LACHES.
  A claim in admiralty, which would be barred at law by the statute of limitations, is barred, by analogy, on the ground of laches.

In Admiralty.   On appeal from district court.

Libel by Thomas J. Southard and others against William Brady on the charter of the bark T. Jeffrey Southard.   Decree for respondent, and libelants appeal.

*Findings of Fact.*   (1) On or about the 15th day of November, 1875, a charter was made of the bark T. Jeffrey Southard by the owners, the libelants and appellants herein, to the respondent and appellee.   It was negotiated by J. H. Beattie, the owners' agent, and for a voyage from Galveston, Tex., to Liverpool, or other specified port on the Continent. (2) That the firm of M. Quin & Co., of Galveston, Tex., were the agents of the respondent at Galveston, and that said firm attended to all business of the respondent in connection with said charter and said loading, and were duly authorized by the respondent for that purpose; and that during said time the respondent was not in Galveston, and had no personal knowledge of what was done.   (3) That on March 29, 1876, the bark sailed from Galveston.   (4) That the claim of the libelants accrued, if at all, on or prior to said day of sailing.   (5) That this action was begun by service of the citation on October 23, 1883.   (6) That Mr. Thomas, one of the said firm of M. Quin & Co., died in 1879 or 1880. (7) The respondent has been a resident of New York since 1874, and at all times had an office in New York city, where he could be found except during occasional absences, none of which exceeded two and a half months.   He also had a residence in New York city or Brooklyn all the time, where he could also have been found except during said absences. (8) The libelants have been guilty of laches.

*Y. Henry Dewey,* for appellants.

*Geo. B. Adams,* for appellee.

LACOMBE, J., *(after stating the findings as above.)*   The transactions out of which the libelants contend that their cause of action arose were completed more than six years before the action was begun.   Statutes of limitations are no longer received in an unfavorable light, as an unjust and discreditable defense, but should receive such support from courts of justice as would make them what they were intended emphatically to be—statutes of repose.   *Bell* v. *Morrison,* 1 Pet. 360.   They are now generally regarded with favor, as being in the interest of justice, by compelling parties to bring their actions promptly, so that debtors shall not be obliged to take care forever of their acquittances, or alleged debtors of the evidence which may enable them to defeat the claims advanced against them.   It is true that there is no statute of limitations in admi-

ralty; but courts of admiralty, like those of equity, will not lend their aid to enforce stale demands. Exceptional circumstances will sometimes lead a court of admiralty to pronounce a claim stale after a lapse of time less than the local statutory period of limitation. Where there is nothing exceptional in the case, the court will govern itself by the analogies of the common-law limitations. *The Sarah Ann,* 2 Sum. 206, per STORY, J. The evidence taken in this court shows that one of the persons, who as agents of the respondent attended to all business of the respondent in connection with the charter and loading, died before the commencement of the action. Were that fact not in proof, however, (and there is some question as to the regularity of the taking of this testimony,) the lapse of the period within which only under the local statutes the respondents are required to preserve their acquittances and evidence should be sufficient to bar the claim.

The elaborate brief submitted by the counsel for the libelants and appellants contains an exhaustive enumeration of authorities bearing on the question of limitation in admiralty. None of them seem to be in conflict with the views above expressed. In those cases, where it is held that the respondent must show that some special interest has been prejudiced by the delay in order to avail of the defense of staleness, it will be found that the delay was for less than the period prescribed by the local statute in common-law actions. In *The Galloway C. Morris,* 2 Abb. (U. S.) 166, which was an action for seaman's wages, the period of service began not more than 21 months before the filing of the libel, and continued down to one week before filing; in *The Mary,* 1 Paine, 180, the delay was for one year only; in *The Bolivar,* Olcott, 477, it was less than two years; in *The Favorite,* 1 Biss. 525, two years and ten months, in *The H. B. Foster,* 3 Ware, 167, seven months, in *The Platina,* 3 Ware, 182, four years had elapsed. *The Key City,* 14 Wall. 653, was an action *in rem* begun three years and a half after the cause of action accrued. In *Brown* v. *Jones,* 2 Gall. 477, decided by Judge STORY in 1845, and much relied upon by counsel for the libelants, it was held that the Massachusetts statute of limitations did not apply,—a defense which was not pleaded,—and the question of laches or staleness, irrespective of the Massachusetts statute, was not considered. In *Willard* v. *Dorr,* 3 Mason, 91, there was a capture and condemnation, and subsequent reversal. Leaving out the period subsequent to the capture, and prior to the return of the proceeds to the owner, six years had not elapsed. In *The Sarah Ann,* 2 Sum. 206, nearly six years had elapsed. In *Smith* v. *Sturgis,* 3 Ben. 330, six and a quarter years had elapsed; the action was not sustained. In *Joy* v. *Allen,* 2 Woodb. & M. 303, the part of the claim which was sustained had been acknowledged as a debt within six years. "The long delay," says the court, "to prosecute for the oil which arrived home is not shown to have led to any losses, acts, or divisions of profits injurious to the owners, or to have been accompanied by any other evidence than the length of time raising a presumption of the payment to the libelant." But it adds on the next page (325:) "My own impression is that the claim for what actually reached the owners ought not to be barred by the delay

to enforce it, unless it has been such as at law would make the statute of limitations available." In *Jay* v. *Allen*, 1 Spr. 130, an acknowledgment within six years took the case out of the statute. The court says: "It is generally true that courts of admiralty, like courts of equity, govern themselves in the maintenance of suits by the analogy of common-law limitations." In *The Eastern Star*, 1 Ware, 185, one voyage only had intervened; in *Saunders* v. *Buckup*, Blatchf. & H. 264, three years and five months. In *The Rebecca*, 5 C. Rob. 102, and *The Mentor*, 1 C. Rob. 181, the delay was, respectively, for 12 and 17 years, and relief was refused. In *The Huldah*, 3 C. Rob. 235, there was a delay of a year and nine months; and in *The Susanna*, 6 C. Rob. 48, of almost six years. In *The Jonge Jan*, 1 Dod. 453, an action brought in 1814, the court (Sir W. Scott) said:

"This is an objection taken to an account of the commissioners of the navy dated as long back as the year 1806. At this great distance of time the court would be inclined to hold the account to be entirely settled, and not liable to be ripped up unless it could be shown by the claimants that they had it not in their power to obtain a revision at an earlier period. If the parties really had no earlier opportunity to look into the transaction, I should not feel disposed to exclude them now, and to hold them to be barred by mere lapse of time. But is it a fact that the parties have had no such opportunity? Would not this court, upon application made to it, have compelled the production of the account long ago? Undoubtedly it would have done so. If parties choose to let matters sleep for so great a length of time, even beyond the period fixed by the statute of limitations, they must take the consequences of their own laches, for the court will not suffer itself to be called upon to open accounts so stale and antiquated as these are. If inquiries of this kind are to be now entered into, I do not see where the matter is to end. It is impossible to say what limitation is to be put, or what number of cases may be affected. If I am to go back seven years, why not seventeen? * * * I think I am fully at liberty to decline going into the question, and to consider it as long ago concluded between the parties."

The precise point raised in the case at bar was decided in this district. *Scull* v. *Raymond*, 18 Fed. Rep. 547. The decision of the learned district judge in that case was never appealed from. It seems to be in harmony with the authorities, and may be accepted as controlling in this case. The decree of the district court is affirmed, with costs.