### DAVIS et al. v. SMOKELESS FUEL CO.

(Circuit Court of Appeals, Second Circuit.   April 8, 1912.)

No. 192.

1. SHIPPING (§ 171*)—DEMURRAGE—LIABILITY OF CHARTERER.

A charterer is not exempted from the payment of demurrage for which he is made liable by the terms of the charter party because of a provision of the bill of lading giving a lien on the cargo for freight and demurrage, which exists by the maritime law, without express contract therefor.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 568; Dec. Dig. § 171.*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

2. SHIPPING (§ 184*)—SUIT FOR DEMURRAGE—LIMITATION.

Limitation does not begin to run against a suit for demurrage for delay in discharging until the lay days have expired, when it begins to run against the right to recover for each day.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 596; Dec. Dig. § 184.*]

3. COURTS (§ 375*)—LACHES—FOLLOWING STATE STATUTES OF LIMITATIONS.

While under Rev. St. § 721 (U. S. Comp. St. 1901, p. 581), a state statute of limitations is binding on the federal courts only in actions at law, courts of admiralty proceed upon the analogy of the statute in considering whether claims are stale, and a suit will be held barred at the ex-

---

piration of the statutory period if the respondent has at all times been subject to suit in the state and no sufficient reason for the delay is given.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. § 375.*]

4. COURTS (§ 366*)—ADMIRALTY—FOLLOWING STATE DECISIONS—LIMITATION.

The ruling of the Court of Appeals of New York that a foreign corporation cannot plead the state statute of limitations will not be followed by a court of admiralty as applied to a corporation which has been continuously subject to service of process within the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*]

Noyes, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Cornelius A. Davis and others against the Smokeless Fuel Company. Decree for libelants, from which they appeal. Affirmed.

For opinion below, see 182 Fed. 1004.

Charles C. Burlingham, for appellants.

Louis Sturcke, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The respondent chartered the schooner "Governor Ames" to carry a cargo of coal which it had sold to the Garfield & Proctor Coal Company, from Newport News, Va., to Boston, Mass., and there deliver the same to that company. The charter party contained the following provision:

"Discharging per National Association bill of lading, and that for each and every day's detention by default of the party of the second part, or agent, demurrage per N. A. B.—lading dollars per day, day by day, shall be paid by said party of the second part (the charterer), or agent, to said party of the first part or agent."

The National Association bill of lading contained the following clause:

"And 24 hours after the arrival at the above-named port, and notice thereof to the consignees named there shall be allowed for receiving said cargo at the rate of one day, Sundays and legal holidays excepted, for every one hundred and fifty tons thereof; after which the cargo, consignee, or assignee. shall pay demurrage at the rate of six cents per ton a day, Sundays and legal holidays not excepted, upon the full amount of cargo, as per this bill of lading, for each and every day's detention, and pro rata for parts and portions of a day, beyond the days above specified, until the cargo is fully discharged; which freight and demurrage shall constitute a lien upon said cargo. After arrival and notice to the consignee as aforesaid, and the expiration of said 24 hours, said vessel shall have precedence in discharging over all vessels arriving or giving notice after her arrival; and for any violation of this provision she shall be compensated in demurrage as if while delayed by such violation her discharge had proceeded at the rate of three hundred tons per day. This bill of lading is subject to terms and conditions of charter party."

It will be seen that the number of lay days for discharging (Sundays and legal holidays being excepted) is to be ascertained by dividing

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cargo, 2,797 tons, by 150 tons, the amount to be discharged per day, giving 18 days 6½ hours. Thereafter demurrage is to be paid at the rate of 6 cents a ton per day, that is, $167.82, Sundays and legal holidays not excepted.

The effect of giving a vessel subsequently arriving preference in discharging was to make the rate of discharge during the period of such preference 300 instead of 150 tons per day. In other words, to reduce the number of lay days and advance the time when demurrage would begin to run.

[1] The respondent contends that it is under no liability for demurrage at all because the National Association bill of lading provides that:

"The cargo: Consignee or assignee shall pay demurrage * * * which freight and demurrage shall constitute a lien upon said cargo."

And so confers by implication a cesser of liability upon the respondent as charterer and shipper. Such a construction is quite inadmissible in the face of the express provision of the charter party that:

"Demurrage shall be paid by said party of the second part (respondent) or agent to said party of the first part (libelant) or agent."

The clause giving a lien for freight and demurrage adds nothing because that lien exists by the maritime law of this country without any stipulation.

[2] The trial court dismissed the libel on the ground that the claim was barred as stale, in analogy to the New York statute of limitations. The respondent argues that the time began to run against libelant's claim March 21, 1903, when a vessel arriving after the schooner was given precedence over her in discharging. This fact alone gave the libelant no cause of action. It only shortened the laying time. Non constat that any liability for demurrage would be caused thereby. For instance, the respondent in this case had 18 lay days and some hours in which to discharge, and the schooner was actually discharged in 4 days. Therefore it might have given 7 days' preference to another vessel and yet have discharged the schooner without incurring any demurrage at all. No liability for demurrage could be incurred until after the lay days had expired. Then it was incurred and payable de die in diem, Sundays and legal holidays included. Time began to run against the right to recover for each day. Ordinarily, of course, a libelant would await suit until the full amount of demurrage had been ascertained, but if he chooses to let years run by, he should be careful to see that he does bring suit within six years from the first demurrage day.

[3] The New York statute of limitations is binding under section 721, U. S. Rev. St. (U. S. Comp. St. 1901, p. 581), upon the courts of the United States only in the trial of actions at law. Still courts in admiralty proceed upon the analogy of the statute in considering whether claims are stale. Nesbit v. The Amboy (D. C.) 36 Fed. 925. If because of the absence of the respondent or any of its property from the jurisdiction of the court the libelant had not been able to bring suit within six years, the court might not treat his claim as barred. The

reason given for the delay in this case is entirely insufficient, namely, that the libelant was awaiting the result of a similar case to which he was not a party, pending in a court in another jurisdiction. During the whole of this period of six years, less at best, one day, the respondent, though a foreign corporation, had an office for the transaction of business and officers and managing agents and property here. For this reason we think that we should follow the analogy of the New York statute of limitations in this case.

[4] The libelant says that by the law of the state of New York, as construed by the Court of Appeals, a foreign corporation cannot plead the statute of limitations. This seems to be so, subject to the exception of a corporation which has designated a person upon whom summons may be served under sections 401 and 432, sub. 2, of the Code of Civil Procedure (Wehrenberg v. New York, New Haven & Hartford R. R. Co., 124 App. Div. 205, 108 N. Y. Supp. 704), in which the authorities are discussed. It is said we ought to follow the state law so construed in this respect also. The Supreme Court of the United States, in Tioga R. R. Co. v. Blossburg R. R. Co., 20 Wall. 137, 143, 22 L. Ed. 331, held that this construction was binding upon the Circuit Court in the trial of an action at law; Mr. Justice Bradley saying:

"These decisions upon the construction of the statute are binding upon us, whatever we may think of their soundness on general principles."

Mr. Justice Miller, with whom Mr. Justice Strong concurred, was a little more forcible in his dissenting opinion:

"Nor do I believe that the courts of any state of the Union, except New York, have ever held that a person doing business within the state and liable at all times to be sued and served personally with process, cannot avail himself of the statute of limitations, if the time prescribed by it to bar such action has elapsed before it was commenced. The liability to suit where process cannot at all times be served must, in the nature of things, be the test of the running of the statute."

We think this construction, when applied to corporations continuously subject to service of process within the state, is arbitrary and unreasonable, and therefore will not follow it.

The Commissioner has found that demurrage began March 26, 1903, and ran to April 3d at 3:30 p. m., being due for 8½ hours on the last day. Suit was begun April 3, 1909. Under the New York statutory construction law the claim would have been barred at the time suit was brought, as held by the District Judge. Aultman & Taylor Co. v. Symes, 163 N. Y. 54, 57 N. E. 168, 79 Am. St. Rep. 565. Section 20, c. 22, of the Consolidated Laws was no doubt in consequence of that decision, amended over a year after the action was brought so as to read:

"The day from which any specified period of time is reckoned shall be excluded in making the reckoning."

But it does not apply by its express provisions to pending cases.

Therefore, following the analogy of the New York statute of limitations, the decree is affirmed, with costs.

NOYES, Circuit Judge (dissenting). The libelant has a meritorious demand for the whole amount of the demurrage. The suit to enforce this demand was brought late, but it does not appear that the respondent has been thereby hindered in making defense or prejudiced in any way. The pendency of other proceedings involving similar questions may not excuse the libelants' delay, but it tends to negative any abandonment of the claim. In view of all the facts and circumstances, I am clearly of the opinion—leaving out of consideration any statute of limitations—that laches is not shown. The essential element of laches—some actual or presumable change of circumstances rendering it inequitable to grant relief—is lacking, and the mere delay unaffected by other circumstances is not so unreasonable as to make a stale claim.

The majority opinion does not controvert these principles, but bars nearly all of the libelants' just demand, by the application of the New York statute of limitations. In order to do so it holds (1) that the demand is severable and (2) that there is a limitation statute the analogy of which should be followed.

The charter party provides that demurrage shall be paid "day by day," which probably gave a right of action for each day's demurrage, although some of the clauses of the National Association bill of lading which are brought in by reference, are not entirely consistent with that conclusion. But while technically the libelants' claim may have been severable, his real demand was for the demurrage due him when the delay to the vessel was over, and a court of admiralty would have viewed with disfavor separate suits for each day's delay. So I regard it as extremely doubtful whether a court of admiralty, in following the analogy of a state statute of limitations, is under any obligation to apply it in such a technical way as to split up a just demand covering but a short period. Courts of admiralty, like courts of equity, do not adopt limitation statutes to their fullest extent when special circumstances exist rendering such course inequitable.

Let us assume, however, that this is a cause in which it would be proper to apply technically a statute of limitations, if there were such a statute to follow. We are then required to look for the statute which must be one which could be availed of in an analogous action at law. It must be shown that there is in the state of New York a statute of limitations which would be applicable to an action upon the contract here in question. And from the principle that all the conditions required by a statute must exist to invoke the analogy of the statute (Mobley v. Cureton, 2 S. C. 140; Perkins v. Cartmell's Adm'r, 4 Har. [Del.] 270, 42 Am. Dec. 753; Varick v. Edwards, 1 Hoff. Ch. [N. Y.] 382; Newberger v. Wells & Leonard, 51 W. Va. 624, 42 S. E. 625; Crocker and Wife v. Clement's Adm'r, 23 Ala. 296), it must also be shown, in my opinion, that the statute which a respondent can set up in admiralty is one which he could plead if sued upon the same cause at law.

In the present case it appears that while there is in this state a statute of limitations otherwise available, only foreign corporations which have complied with certain statutory provisions relating to the

service of process can take advantage of it. Wehrenberg v. New York, etc., R. Co., 124 App. Div. 205, 108 N. Y. Supp. 704. It is not contended that this respondent has complied with these provisions and consequently it could not plead the statute of limitations if sued upon the present contract in an action at law. So far as this case is concerned there is no statute of limitations the analogy of which should be followed.

It is not a question whether we approve the construction which the New York courts have placed upon the statute. It is immaterial whether we think such interpretation arbitrary or reasonable. That construction is binding both upon the state and federal courts in an action at law (Tioga R. R. Co. v. Blossberg, etc., R. R. Co., 20 Wall. 137, 22 L. Ed. 331), and being so binding there is no statute of limitations for a court of admiralty or equity to follow. I am unable to assent to the proposition that such a court may construe a state. statute contrary to state decisions in order to obtain a satisfactory measure to adopt and apply. That is making the law, not following it.

The amount involved in this controversy is not large. The questions presented slightly affect the public, and they go to the remedy rather than to the right. The case belongs to a class in which I am reluctant to dissent. And yet I find myself unable to agree to the result reached by the majority here—a result which I regard as inequitable and as obtained through the erroneous application of equitable principles.

In my opinion the libelants should recover the full amount of the demurrage.