## CHRISTIANSSAND SHIPPING CO. v. MARSHALL.

District Court, E. D. Pennsylvania. August 9, 1927.

No. 75 of 1925.

1. Courts ⊜⟹96(1)—Ruling of federal courts in one circuit is not binding as precedent on courts in other circuits.

Ruling of federal courts in one circuit is not of binding force as precedent on courts outside of that circuit.

2. Shipping ⊜⟹50—Under charter party making consignee liable for "port charges," consignee held liable for towage up Delaware Bay and river to unloading dock at Philadelphia.

Where charter party made consignee liable for all "port charges," including towage, *held*, that consignee was liable for towing of ship from capes up Delaware Bay and river to dock at Philadelphia, which was place of unloading, where such towage charges were reasonably necessary and ordinarily incurred; "port charges" being charges reasonably necessary and ordinarily incurred in reaching the place of discharge.

[Ed. Note.—For other definitions, see Words and Phrases, Port Charges.]

3. Limitation of actions ⊜⟹56(1)—Limitations run from payment for another under agreement for reimbursement, or where payer succeeds to rights of one receiving payment from contract to pay.

Where one pays for another on a promise of reimbursement, expressed or implied, right of action to recover payment arises, and limitation begins to run, on payment; but, where payer succeeds to rights of one to whom money is paid, cause of action accrues, and limitations begin to run, with contract to pay.

4. Limitation of actions ⊜⟹56(1)—Limitations ran against vessel's claim for towage, paid by it on consignee's refusal, from time of service, not from time of payment.

Where vessel paid port towage charges on consignee's refusal to pay in violation of its charter obligations, limitations began to run against vessel's claim from time towage services were rendered, and not from time of payment; vessel having no other or greater rights than tug.

**5. Admiralty ⬡34—As respects statute of limitations, admiralty follows law.**

As respects application of statute of limitations, admiralty, like equity, follows the law.

**6. Equity ⬡87(1)—Doctrine of "laches" is applied only when it should be, but equity accepts judgment of Legislature in enacting statute of limitations.**

Legal doctrine of the bar of the statute of limitations is arbitrary, and applies on the stroke of the clock, while equitable doctrine of "laches" applies only when it should be applied; but equity accepts judgment of Legislature that action should be barred, and likewise decrees a bar.

**7. Admiralty ⬡34—Though circumstances may excuse failure to make earlier claim, same circumstances may not cause forfeiture of protection against stale claims.**

Whether doctrine of laches should be applied in admiralty is to be judged from the standpoint of both parties, and, though circumstances may excuse a claimant for not making an earlier claim, the same circumstances may not cause the one against whom the claim is made to forfeit his right of protection against stale claims.

**8. Admiralty ⬡34—Vessel's libel, filed May 25, 1925, on claim against consignee for towage services rendered April 29, 1919, held barred by laches and limitations.**

Vessel's claim against consignee for port towage charges incurred April 29, 1919, paid by vessel May 29, after consignee's refusal on May 8 to fulfill its obligation to pay such charges, *held* barred by laches, as well as by limitations, where libel was not filed until May 25, 1925.

In Admiralty. Libel by the Christianssand Shipping Company against Edward E. Marshall. Libel dismissed, after trial hearing on pleadings and proofs.

Ryan, Tafel & Ryan, of Philadelphia, Pa., and Haight, Smith, Griffin & Deming, of New York City, for libelant.

A. G. Dickson, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. This cause concerns itself with the very prosaic theme of a charter party, but the opposing arguments have been made very interesting. To express what was thought to be the agreement of the parties, they adopted a Shipping Board form of contract. This was framed for use in shipments from named South American ports to any North Atlantic port in the United States. This gave to the shipper the selection of the port of discharge. As the freight rate was fixed, the port selected became of importance. A proper adjustment was attempted to be reached by the broad agreement that the named rate should cover all charges for bringing the cargo to the "port"; those after-

wards incurred to be paid by the consignee, in addition to the agreed freight. This left open the question of the limits of the "port." The charter party deals with it in clause 9 by providing first broadly that the consignee should pay all "port" charges and then defining the phrase as including inter alia "towage." As, however, a vessel may accept the services of a tug whenever desired and available, we are brought back to the word "port" as a limitation of the word "towage."

Among the designated ports of loading in the printed form of contract is Rosario, Argentina. By clause 10 this port is specially named as one in reaching and leaving which river towage charges fall upon the consignee. The record is silent respecting whatever existing reasons there may be for special mention of this port, beyond the common geographical knowledge that the site of the place is some distance from the mouth of the river on which it is situate. In the contract as made, however, Rosario was not the port of loading, nor does clause 10 appear as part of it, because this clause was wholly struck out. The vessel which concerns this cause is a bark. The port of unloading was Philadelphia, and the place of unloading a pier. The vessel was taken in tow by a tug just off the capes, and towed up the Delaware Bay and river and docked. It is admitted that the services of a tug are required to dock a vessel after she reaches what beyond all dispute is the "port," and these charges the respondent willingly paid. He, however, distinguishes between towage service, which in his view is a proper "port charge," and a similar service, which may be called "river towage." This differentiation raises one of the questions presented. There are two questions. One goes to the cause of action; the other is whether the libelant has lost his claim through laches, by analogy to the bar of the Statute of Limitations.

## Conclusions Stated.

The conclusions reached are:

(1) The towage here is a "port charge," to be paid by the consignee.

(2) The libel should be dismissed for laches.

## Discussion.

[1] Among the reasons which have led us to the first conclusion is that a like contract has been so read by the courts of the Second circuit. This ruling, it is true, is not of binding force outside of that circuit; but a fact of practical value is that the Shipping Board forms of contract are now in almost universal use, and it is of importance that they be given

the same construction in one jurisdiction as another. The plain truth is the word "port" is a word used in so many different senses that, as used in this contract, it is so ambiguous as to be well-nigh meaningless. Any meaning given to it must be more or less reached by the rescript process.

[2] The very clear and forceful argument addressed to us by the proctor for the respondent has failed to produce conviction, because it encounters the ruling in the Second circuit, and because the controlling thought with us is that the main purpose of the scheme of this form of contract was to fix a rate of freight for ocean carriage, to which all the necessary expense of reaching the place of discharge and of discharging should be added. As, however, as before remarked, a vessel may accept towage at any time and would be greatly tempted to do so if the expense was borne by the consignee, the limitation to legitimate "port" service must be observed. This suggests as the definition of "port charges" those reasonably necessary and ordinarily incurred in reaching the place of discharge of cargo.

Delaware Bay and the river, as well, afford ample space and depth of water for vessels, but the means employed to secure a deep and straight channel throughout has resulted in its narrowing. The vessel here is of the square-rigged type. Such vessels did at one time navigate the river under sail. They were, however, of smaller build and less draught than now, and the natural channel, although more tortuous, was much wider than at present. It is doubtless still practicable to bring a square-rigged vessel to Reedy Island under sail, and by awaiting favorable conditions as far up as Marcus Hook; but the services of a tug are reasonably necessary, and, generally speaking, are always employed. Towing charges up the bay and river are thus reasonably necessary and ordinarily incurred. Just where a tug would pick up her tow depends upon circumstances; but that a point outside the capes is not out of the ordinary is proven by the fact that tugs go that far out to get tows.

We are unable to follow counsel for respondent in his application of the maxim "expressio unius est exclusio alterius" to clause 10 of the Shipping Board form of contract. We pass the fact that there is no clause 10 in this charter party, because of the bearing of its presence in the form upon the proper construction of clause 9, which is here as in the printed form, but direct attention to the feature that the Rosario exception calls for payment of towage in leaving as well as reaching the port.

[3, 4] This brings us to the question of the statute of limitations. The vessel paid the towage, and now seeks to collect it from the consignee. The cause of action, however, arises, not out of the fact of payment, but out of the charter party contract. The right of the libelant springs from a promise made or imputed, or from a like promise to which the libelant succeeds. The right of action in consequence accrued as soon as the services were performed. There is a distinction between cases in which one pays for another on a promise of reimbursement, expressed or implied, and cases in which the payer succeeds to the rights of the one to whom the money is paid. In the first class of cases, the right of action arises upon payment; in the other, it begins with the contract to pay. Here the right of action belongs to the latter class. The libelant has no other nor greater rights than those of the tug. The statute would have begun to run against the tug from the time of services rendered, and runs against the libelant from the same time.

[5-7] Admiralty, like equity, follows the law. It is, of course, true that the legal doctrine of the bar of the statute is in a sense wholly different from the equitable doctrine of laches. The former is the ipse dixit of the law, and applies on the stroke of the clock; the latter is not arbitrary, and applies only when it should be applied. In the former, however, it is the judgment of the Legislature that the action should be barred, and equity accepts this judgment and likewise decrees a bar. What ought to be should be judged from the standpoint of both parties, not one of them. Circumstances may excuse a claimant for not making an earlier claim, but the same circumstances may not cause the one against whom the claim is made to forfeit his right of protection against stale claims.

[8] The pertinent dates are: Towage incurred payable April 29, 1919. Payment demanded of the respondent and refused May 8, 1919. Payment of towage by libelant May 29, 1919. Libel filed May 25, 1925. The statute had in consequence closed on libelant's right of action, had it been one at law, and equity makes a like decree.

There is no need to discuss the cases to which we have been referred, some of which we list as follows: Skomvaer v. Grace (C. C. A.) 297 F. 746; Tanner v. Dundee (C. C.) 12 F. 646; U. S. v. Louisiana, 123 U. S. 32, 8 S. Ct. 17, 31 L. Ed. 69; Nesbit v. The Amboy (D. C.) 36 F. 925; Southard v. Brady

(C. C.) 36 F. 560; Nolte v. Hudson (C. C. A.) 297 F. 758; Davis v. Smokeless (C. C. A.) 196 F. 753.

A decree dismissing the libel, with costs to respondent, may be submitted.