**CHRISTIANSSAND SHIPPING CO., Limited, v. MARSHALL.**

Circuit Court of Appeals, Third Circuit.
March 7, 1929.

Rehearing Denied April 1, 1929.

No. 3829.

Clarence B. Smith, of New York City, for appellant.

Arthur G. Dickson, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court dismissing the libel on the ground of laches.

The Christianssand Shipping Company, libelant, on or about January 8, 1919, chartered the Norwegian bark Sjursjo to the respondent, Edward E. Marshall, for a voyage from Rio de Janeiro, Brazil, to a United States North Atlantic port. Orders for the discharging port were to be given on the signing of the bills of lading. Philadelphia was then designated as the discharge port.

The charter party provided that: "9. Charterers to pay all port charges at both loading and discharging ports, including Custom House fees, pilotage, towage, tonnage dues, permanency dues, wharfage, quay or dock dues, boca dues, if any, maintenance dues, on vessel and/or lighters."

The controversy arises over the refusal of the charterer to repay to the libelant the towage charge which it in the first place paid for towing the bark from Fenwick's Island, below the Delaware Capes, to the dock in Philadelphia. The libelant, owner of the bark, paid, it is alleged, as "was the general course of business," the towage and port charges. The charterer paid the port charges, but refused to pay it the towage.

The parties differed in the court below in their definition of what constitutes a "port

charge." The charterer paid the following charges, amounting to $454.58:

| | |
|---|---:|
| To 3 tugs docking at Port Richmond | $153 00 |
| To tonnage tax on 1462 tons | 87 72 |
| To inward pilotage | 110 00 |
| To services of tug to captain and customs inspector | 25 00 |
| To custom house entry | 8 37 |
| To lay order for immediate discharge | 3 00 |
| To harbor pilotage $5.00, consul's fee $1.10 | 6 10 |
| To health dues | 5 00 |
| To fumigating bill | 26 39 |
| To running lines | 5 00 |
| To agency fee | 25 00 |
| | $454 58 |

He said these are the "port charges," including "towage," which he agreed to pay, but that the towage from Fenwick's Island to the place where the three tugs took the bark to dock her was a "river towage" and is not included in the "port charge," which includes only a towage service in and about docking. He therefore refused to pay this towage charge of $1,500. The District Court found, as above stated, that he should have paid it, and on the authority of the opinion of the Circuit Court of Appeals for the Second Circuit in the case of Skomvaer v. Grace, 297 F. 746, on all fours with the case at bar, we think the bill should have been paid by the charterer. In that case the court said:

"The evidence is that the channel from the sea to Philadelphia is very tortuous, and in some places very narrow, and without a tug there would be danger of going aground; and it appears that the harbor limits of the port of Philadelphia extend clear down the Delaware river to Cape May, and that the port of Philadelphia extends on the south of the state line at Marcus Hook according to one witness. The limits of the harbor, it is testified, are limited to a line drawn between Cape May and Cape Henlopen.

"The testimony shows that it is customary for sailing vessels of the type of the Skomvaer, inbound, to be towed the entire distance from the mouth of the Delaware Bay to the Philadelphia anchorage."

The charterer raised below, but does not raise here, the correctness of the conclusion that the charge for the towage in question was included in the "port charges" and should have been paid by him. Accordingly, the only question before us is whether or not the charge was barred by laches when this suit was brought.

The towage was completed and payable by the charterer to the Southern Transportation Company, which towed the bark, on April 25, 1919. The libel was not filed until May 25, 1925, more than six years after the towage was payable.

While there is no statute of limitations within which actions must be brought in admiralty, yet admiralty, like equity, usually follows the law and in analogy applies the state statute of limitations within which suits must be brought. However, in exceptional circumstances, courts of admiralty disregard the statutory limitations and enlarge or diminish them. Coburn v. Factors' & Traders' Ins. Co. (C. C.) 20 F. 644; Southard et al. v. Brady (C. C.) 36 F. 560; Lincoln v. Cunard S. S. Co. (C. C. A.) 221 F. 622; The Alabama (C. C. A.) 242 F. 431; Great Lakes Transportation Co. v. Hand & Johnson Tug Line (D. C.) 289 F. 130.

Was there anything in the circumstances of this case to take it out of the general rule?

As above stated, the appellee felt that he should not pay the towage charge from the Capes up the Delaware Bay and river to Philadelphia. This identical question, in the case of the Skomvaer, 286 F. 711, was before the United States District Court for the Southern District of New York on a charter party dated September 20, 1918. The District Court held that the charterer was not liable; that the charge should be paid by the owner of the vessel. That decree, however, was reversed by the Circuit Court of Appeals in an opinion filed January 7, 1924 (297 F. 746). This was an important case involving not merely the money involved in that case, but also the question of whether or not the charterer must pay for the towage from the Delaware Capes to Philadelphia under paragraph 9 in the Shipping Board form of contract, providing that, "Charterers to pay all port charges at both loading and discharging ports, including * * * towage." Upon this case the legality of the custom of the port of Philadelphia depended. The libelant had also a number of cases involving the identical question at issue in this case. Consequently this was a test case. It was thought best not to start the other cases, including the instant case, and litigate the same question in all of them, but to await the result of the Skomvaer Case. When that case was decided by the Circuit Court of Appeals, all the other cases involving the same question, except the one at bar, were settled on the authority of that case.

The opinion, as above stated, was filed January 7, 1924. Thereafter the decree was entered, and after allowing some time for a possible rehearing and application for certiorari, the libelant, through its counsel on April 27, 1925, wrote respondent calling his attention to the charter party; the conclusion of the court in the Skomvaer Case, set-

tling the question in dispute between them, telling him that since that decision many charterers, who had withheld payment pending the decision, had settled their towage accounts and asked him to send his check in payment of his account of $1,500. The respondent did not reply, and on May 11, 1925, libelant again wrote asking him to reply. The next day, May 12, 1925, the respondent replied saying that the delay in answering was due to the fact that he had just returned from abroad and to pressure of other matters, and suggested that the libelant send him a copy of the charter party and he would "be glad to look into the matter." On the following day, libelant wrote, saying that he would be in Philadelphia on the ·15th and would bring a copy of the charter party along and take up the towage claim with him. On the 14th the charterer acknowledged the letter and said that he would be obliged to be away from town on the afternoon of the 15th, but if the letter did not reach him in time (to prevent his coming) he could take up the matter with his secretary. On May 18, 1925, libelant wrote:

"Confirming the writer's conversation with Mr. Rupprecht on the 15th instant, we take pleasure in handing you herewith the following documents:

"1. Photostatic copy of charter party dated January 9, 1919.

"2. Copy of the account of Wesenberg & Co., shipbrokers, with the owners, showing payment of inward towage of $1,500.

"3. Copy of the opinion of Rogers, J., in the U. S. Circuit Court of Appeals, 2d Cir., in the case of the Bark Skomvaer v. W. R. Grace & Co., reported in 297 F. 746."

On May 25, 1925, the charterer replied:

"I have talked to my attorney in reference to the towage on the Sjursjo, and he has not given me his opinion as yet, as to whether he recommends my fighting the matter, or trying to make an amicable settlement.

"He suggests, however, that you send me at once vouchers from your clients, which show the amounts actually paid, which we are entitled to.

"In looking back over our old records in the matter, however, we find the towage charge, at the time we refused to pay same, was $1,000.00, and not $1,500.00."

On that same day, May 25, 1925, the libel was filed.

It therefore appears that some time after the decision in the test case was filed, the charterer went abroad, and as soon as he returned, negotiations were begun with him by the libelant with a view to settling the case without litigation. These negotiations continued from that time until the very day the libel was filed. If negotiations had not been entered into and the libel had been filed as soon as the Skomvaer Case had been decided, the question of laches would not have arisen. In the case of The Alabama, supra, the Circuit Court of Appeals for the Fifth Circuit said: "A party with a cause of action against a ship should not be penalized (for laches) for undertaking to settle his claim amicably." To decide this case on the ground of laches would be to penalize the libelant for trying to negotiate a settlement without litigation. It seems that the circumstances of this case are such as to justify us in disregarding the statutory period of limitations, if on examination of the facts we find it to be necessary.

█ If this were a case of the Southern Transportation Company against the charterer for the towage, the claim, in the absence of exceptional circumstances, would be barred by laches, for the towing was completed on April 25, 1919, and in analogy to the statutory period of six years in bringing suits at law (Pa. St. 1920, § 13857) the action would have been barred on April 25, 1925. But this is not a case between the transportation company and the charterer, but between the owner of the vessel which engaged the services of the transportation company for the charterer in accordance with the prevailing custom at the port. This towage in question, like the port charge of $454.58, was incurred by the libelant for the charterer and had to be paid by the libelant before it could call upon the charterer to reimburse it. The charterer reimbursed the libelant for the $454.58. This item stood upon the same basis as the towage charge, and should likewise have been paid. The libelant could not call upon him to reimburse it until it had actually paid the bill on May 29, 1919. Trafikaktiebolaget Grangesberg Okelosund v. Wilkens (D. C.) 4 F.(2d) 577, 578. This was the date when this cause of action arose. Before that, the libelant had no claim against the charterer. This suit was brought on May 25, 1925. It was therefore within the six-year statutory period and is not barred by laches, even if there were no exceptional circumstances justifying the extension of the statutory period.

Some question arose as to whether this inward towage charge was $1,000 or $1,500. As we understand the facts, the libelant paid $1,500 towage, and so is entitled to recover that sum from the charterer with interest from the time the libel was filed. If we are in error as to the amount paid, that can be

corrected. We are not inclined to allow interest for the time the test case was being litigated and for the time thereafter when the parties were negotiating for a settlement without litigation.

The decree of the District Court dismissing the libel is reversed.

WOOLLEY, Circuit Judge, dissents.